**PLANNED PARENTHOOD OF SOUTHERN ARIZONA; Planned Parenthood of Central and Northern Arizona, Inc.; David L. Child, M.D., Plaintiffs–Appellants,**

**v.**

**Barbara LAWALL, County Attorney for Pima County and as the representatives for all other County and City Attorneys; Janet Napolitano, Arizona Attorney General, Defendants–Appellees.**

**Planned Parenthood of Southern Arizona; Planned Parenthood of Central and Northern Arizona, Inc.; David L. Child, M.D., Plaintiffs–Appellants,**

**Barbara Lawall, County Attorney for Pima County and as the representatives for all other County and City Attorneys; Janet Napolitano, Arizona Attorney General, Defendants–Appellees.**

**Nos. 01–16799, 01–16861.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 2002.

Oct. 9, 2002.

Eve C. Gartner, Planned Parenthood Federation of American, Inc., New York, NY, for the appellants.

Paula S. Bickett, Chief Counsel, Civil Appeals, Office of the Attorney General, Phoenix, AZ, for the appellees.

Before LAY,* FERGUSON, and TALLMAN, Circuit Judges.

**OPINION**

TALLMAN, Circuit Judge:

Planned Parenthood of Southern Arizona and its corporate chapter, Planned Parenthood of Central and Northern Arizona, Inc., and David L. Child, M.D., (collectively "Planned Parenthood") challenge the facial validity of Arizona's parental consent abortion statute. We must decide whether the current incarnation of the statute's judicial bypass provision satisfies two constitutionally recognized rights of privacy—the right to make fundamental life decisions and the right to avoid disclosure of personal information. We hold that it does.

The district court denied Planned Parenthood's request for a declaratory judgment and for a permanent injunction enjoining enforcement of the statute, holding

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

that the judicial bypass provision satisfies the Supreme Court's requirement of anonymity, does not place an undue burden on a young woman's freedom to terminate her pregnancy, and does not compromise her right to informational privacy. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

The State of Arizona repeatedly has attempted to enact a parental consent abortion statute. Arizona's 1989 version of the statute was first held unconstitutional by the United States District Court for the District of Arizona in 1992. The court enjoined enforcement of the statute on the grounds that the medical procedure provision was unconstitutionally vague, the definition of medical emergency was unconstitutionally narrow, and the judicial bypass procedure did not provide a minor with a constitutionally sufficient opportunity to obtain an expedited review. *Planned Parenthood v. Neely,* 804 F.Supp. 1210 (D.Ariz.1992).

The Arizona legislature amended and reenacted the parental consent abortion law in 1996, but the district court held that it failed to pass constitutional muster. Specifically, the court held that two provisions were unconstitutionally vague: the requirement that a request for judicial authorization for abortion without parental consent be determined "promptly" and the standard regarding the minor's "best interest." *Planned Parenthood v. Neely,* 942 F.Supp. 1578 (D.Ariz.1996).

On appeal, we vacated the district court's decision without reaching the merits, holding that it was error for the district court to have allowed Planned Parenthood and Neely to supplement their complaint in the 1989 action in order to challenge the constitutionality of the 1996 statute. *Planned Parenthood v. Neely,* 130 F.3d 400 (9th Cir.1997). A new suit was subsequently commenced. The district court again found the statute unconstitutional and permanently enjoined its enforcement. We affirmed on appeal. *Planned Parenthood v. Lawall,* 180 F.3d 1022 (9th Cir.1999), *amended on denial of reh'g,* 193 F.3d 1042 (9th Cir.1999).

In an attempt to harmonize the statute with our ruling, the Arizona legislature drafted yet another version of the statute. The most recent incarnation of section 36–2152 was scheduled to go into effect on July 14, 2000. On June 21, 2000, Planned Parenthood moved for a preliminary injunction, a permanent injunction, and a declaratory judgment holding the statute unconstitutional on the grounds that (1) it did not adequately protect the confidentiality of pregnant minors who seek judicial bypass, (2) its standards for proving maturity and "best interest" were contrary to governing law, and (3) it failed to provide physicians with clear notice of what conduct was prohibited.

Prior to a hearing on the merits, the district court entered a preliminary injunction enjoining the State of Arizona from enforcing the statute. On September 15, 2000, the district court heard Planned Parenthood's motions. While the court took the matter under advisement, it granted defendants' Motion in Limine to preclude the testimony of Dr. David Child regarding a particular breach of confidentiality pertaining to one of his former patients and ordered the preliminary injunction to remain in effect until the district court issued an order. On August 9, 2001, the district court denied Planned Parenthood's request for relief and dissolved the preliminary injunction. Enforcement of the statute was subsequently stayed pending appeal.

On this appeal, Planned Parenthood challenges the facial validity of a discrete portion of Arizona's judicial bypass proceeding—the confidentiality provision in Arizona's parental consent abortion law—on the ground that it does not comport with Supreme Court anonymity requirements. Planned Parenthood also contends the confidentiality provision violates young women's informational privacy rights because it is not narrowly tailored to meet the state's interest. Appellees, a class of all prosecuting attorneys in the State of Arizona, assert that Planned Parenthood misconstrues the breadth of the exception and that the confidentiality provision satisfies Supreme Court precedent. Appellees' argument is persuasive.

II

We review de novo the legal question of whether a statutory provision is constitutional. *See Taylor v. Delatoore,* 281 F.3d 844, 847 (9th Cir.2002). In analyzing a facial challenge to an abortion statute, we apply the undue burden standard set forth in *Planned Parenthood v. Casey,* 505 U.S. 833, 895, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992).[1] *See Lawall,* 180 F.3d at 1027.

III

The United States Supreme Court held in *Roe v. Wade* that the "right of privacy ... founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action ... is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Although *Roe* has been repeatedly challenged over the last three decades, the Supreme Court continues to respect and reaffirm the basic premise that a woman's right to choose includes the right to determine whether or not to terminate her pregnancy.

A female minor also possesses a constitutionally protected right to choose. *See Planned Parenthood v. Danforth,* 428 U.S. 52, 72–75, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). States may limit the rights of minors, however, by requiring parental involvement in the decision-making process. See *Bellotti v. Baird,* 443 U.S. 622, 640–42, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) ("*Bellotti II*") (plurality opinion). If a state chooses to encourage parental involvement, such as requiring the parental consent of one or both parents, the Supreme Court has held that the state must provide an alternative or bypass procedure. *See Danforth,* 428 U.S. at 75, 96 S.Ct. 2831 (holding that a blanket provision giving parents "absolute power to overrule a determination ... to terminate the [minor's ] pregnancy" is unconstitutional).

When a state chooses as its alternative procedure to provide for a judicial bypass proceeding in which minors may obtain authorization for an abortion by court order, as Arizona has done, the Supreme Court has held that a pregnant minor must show that: (1) "she possesses the maturity

1. To the extent that the district court relied upon the standard of review in *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), it was incorrect. We have held that *Salerno* is no longer the proper standard of review in light of *Casey. See Lawall,* 180 F.3d at 1025–27. *Compare Casey,* 505 U.S. at 877, 112 S.Ct. 2791 ("[a] finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus") (plurality opinion), *with Salerno,* 481 U.S. at 745, 107 S.Ct. 2095 (holding that in order to mount a successful facial challenge to a legislative act "the challenger must establish that no set of circumstances exists under which the Act would be valid").

and information to make her abortion decision, in consultation with her physician, without regard to her parents' wishes"; (2) "even if she cannot make the abortion decision by herself" the abortion she desires is in her best interest; (3) "the procedure must insure the minor's anonymity"; and (4) "courts must conduct a bypass procedure with expedition to allow the minor an effective opportunity to obtain the abortion." *Ohio v. Akron Ctr. for Reproductive Health,* 497 U.S. 502, 511–13, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) ("*Akron II*") (citing *Bellotti II*, 443 U.S. at 643–44, 99 S.Ct. 3035).

Planned Parenthood asserts that the district court erred in upholding Arizona's parental consent abortion law. It argues that the broad exception to the confidentiality requirement increases the likelihood that young women seeking judicial authorization for an abortion will have their confidentiality breached in violation of their Fourteenth Amendment right to decide whether to continue a pregnancy.

█ Planned Parenthood's challenge to the confidentiality provision contained in Arizona's parental consent abortion law implicates the third *Bellotti II* requirement—that the judicial proceeding, and any appeals that follow, be completed with anonymity.[2] *See Lambert v. Wicklund,* 520 U.S. 292, 295, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997); *Thornburgh v. Am. College of Obstetricians & Gynecologists,* 476 U.S. 747, 766, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986), *overr'd in part on other grounds by Casey,* 505 U.S. at 882, 112 S.Ct. 2791; *Bellotti II,* 443 U.S. at 644, 99 S.Ct. 3035. We hold that the Arizona confidentiality provision satisfies this standard.

Section 36–2152(D) of the parental consent abortion statute provides:

> Proceedings in the court under this section are confidential and have precedence over other pending matters. Members of the public shall not inspect, obtain copies of or otherwise have access to records of court proceedings under this section unless authorized by law. A judge who conducts proceedings under this section shall make in writing specific factual findings and legal conclusions supporting the decision and shall order a confidential record of the evidence to be maintained including the judge's own findings and conclusions. The minor may file the petition using a fictitious name. *For purposes of this subsection, public does not include judges, clerks, administrators, professionals or other persons employed by or working under the supervision of the court or employees of other public agencies who are authorized by state or federal rule or law to inspect and copy closed court records.*

A.R.S. § 36–2152(D) (2000) (emphasis added). Similarly, section 36–2152(F) provides that a pregnant minor is entitled to an expedited confidential appeal. A young woman's confidentiality is also protected by A.R.S. § 38–504(B), which criminalizes an employee's disclosure of confidential documents. See *Akron II,* 497 U.S. at 512, 110 S.Ct. 2972 (upholding the constitutionality of an Ohio consent statute's anonymity provision and listing the state provision making it a criminal offense to disclose confidential documents as part of the state's effort to ensure a minor's anonymity).

2. When, as here, the distinction between confidentiality and anonymity do not appear to bear constitutional significance, the terms are considered interchangeable. See *Akron II,* 497 U.S. at 513, 110 S.Ct. 2972 (holding that this distinction has not made a difference in other Supreme Court cases).

In order to satisfy the *Bellotti II* anonymity requirement the Supreme Court has held that a statute must "take[ ] reasonable steps to prevent the public from learning of the minor's identity." *Id.* at 513, 110 S.Ct. 2972. Thus, complete anonymity is not critical to pass constitutional muster. See *id.* Indeed, we have held that "[n]either complete anonymity nor any specific procedure for ensuring confidentiality is required." *Glick v. McKay,* 937 F.2d 434, 439 (9th Cir.1991), overruled on other grounds by *Lambert,* 520 U.S. at 297, 117 S.Ct. 1169.

As required by *Akron II*, a plain reading of the confidentiality provision in section 36–2152(D) reveals that the statute takes reasonable steps to protect a young woman's anonymity. The statute begins with a blanket statement that all judicial bypass proceedings are confidential and "shall" not be made public. The next sentence ensures that members of the general public may not access such information. The presiding judicial officer is also instructed to order that all records of evidence be confidentially maintained. To further protect a young woman's rights, the pregnant minor is permitted to use a fictitious name.[3] Finally, the statute limits by category state personnel who may access such confidential information.

Despite the above safeguards, Planned Parenthood contends that the exception to the term "public" fails to assure young women that the judicial bypass procedures will remain anonymous. The exception to the term "public" appears for the first time in the 2000 statute.[4] Planned Parenthood argues that this newly created exception swallows the rule. We disagree.

The exception does not provide all court employees and other public agencies with the right to demand access to confidential documents. In fact, by the statute's very terms, the court retains discretion to allow access to those employees or personnel who need access to such information in order to perform their official duties. While we concede, as we must, that the exception is broader than other states' judicial-bypass procedures, this fact cannot serve as a basis for striking it down.[5] The

3. We reject appellees' contention that this provision alone satisfies *Bellotti II*'s anonymity requirement. In *Planned Parenthood Ass'n v. Ashcroft,* the Supreme Court noted that a minor's confidentiality "is assured by the statutory requirement that allows the minor to use her initials on the petition." 462 U.S. 476, 491 n. 16, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983). The Missouri statute is distinguishable, however, because it presumed that the proceedings are confidential unless one obtains a court order demonstrating a "legitimate interest." Mo.Rev.Stat. § 211.321(1) (stating "[r]ecords of juvenile court proceedings as well as all information obtained and social records prepared in the discharge of official duty for the court shall not be open to inspection or their contents disclosed, except by order of the court to persons having a legitimate interest therein ...."). In addition, the Supreme Court held in *Thornburgh* that withholding a minor's name is not enough by itself to protect her anonymity where the publically available information could identify the minor. 476 U.S. at 766–68, 106 S.Ct. 2169. Because the potentially identifying information contained in the file is often so detailed that the absence of the minor's name will not protect her interests, the use of a fictitious name without more does not appear adequate to protect a pregnant minor's confidences.

4. The terms of the exception are derived from Rule 123(b)(11) of Rules of the Arizona Supreme Court, which governs public access to judicial records in the State of Arizona.

5. The dissent is based on a concern that too many government employees and agencies will have access to the court records. But a woman's anonymity is not compromised by authorizing government agencies limited access to court records. Access does not necessarily mean disclosure. A judicial bypass procedure passes constitutional muster if it adequately protects against *public* disclosure of the woman's identity.

Supreme Court has explicitly held that the possibility of disclosure of information by state employees may not serve as the basis for a decision regarding the facial validity of a statute. *See Akron II,* 497 U.S. at 513, 110 S.Ct. 2972. *See also Planned Parenthood Ass'n v. Miller,* 934 F.2d 1462, 1479 (11th Cir.1991) ("The fact that some public officials have access to the minor's court record does not compromise the record's confidentiality, nor does it mean that they will make unauthorized disclosures of it.").

Thus, while appellants would prefer a statute guaranteeing to every young woman complete confidentiality under all circumstances, such assurance is not required by law. Planned Parenthood's repeated reference to the fact that an employee, or someone under court supervision, may have disclosed confidential information regarding a pregnant minor, while disturbing, does not render the provision facially unconstitutional. We are addressing a facial challenge to the statute. As such we must consider whether the confidentiality exception on its face reasonably preserves a pregnant minor's confidential information. We hold that it does. The language of Arizona's parental consent abortion statute and the availability of criminal proceedings to punish unauthorized disclosures satisfies the third *Bellotti II* requirement and thus is consistent with Supreme Court case law.[6] Accordingly, the statute does not unduly burden a young woman's right to choose. *See Manning v. Hunt,* 119 F.3d 254, 263 (4th Cir.1997).

## IV

We next consider whether the statute violates a young woman's privacy interest in avoiding disclosure of sensitive personal information. *See Whalen v. Roe,* 429 U.S. 589, 599 600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). This interest, often referred to as the right to "informational privacy," *Ferm v. United States Trustee (In re Crawford),* 194 F.3d 954, 958 (9th Cir.1999), applies both when an individual chooses not to disclose highly sensitive information to the government and when an individual seeks assurance that such

In *Akron II,* the Supreme Court considered the reasoning advanced by the dissent here. The plaintiffs in *Akron II* had "maintain[ed] that the Ohio laws requiring court employees not to disclose public documents are irrelevant because *the right to anonymity is broader than the right not to have officials reveal one's identity to the public at large.*" *Akron II,* 497 U.S. at 512, 110 S.Ct. 2972 (emphasis added). The Supreme Court rejected this argument and held that the statute in question satisfied the anonymity requirement because it "takes reasonable steps to prevent *the public* from learning of the minor's identity." *Id.* at 513, 110 S.Ct. 2972 (emphasis added). While we agree with the dissent that the right to privacy is critical and prevents government intrusion into a woman's right to choose, the Supreme Court has interpreted the anonymity requirement as mandating roadblocks to *public* knowledge of the minor's identity. Contrary to the conclusion of the dissent, we are confident that for purposes of constitutional analysis, the Arizona statute embraces the necessary protections by criminalizing the disclosure of confidential documents accessed in an employee's official capacity, labeling the proceedings "confidential," and mandating that the public "shall not" have access to the judicial records.

6. Our holding is not dependent upon the manner in which the Arizona superior courts choose to apply the confidentiality provision to judicial bypass proceedings. There is no evidence on this record that the state courts will do anything but observe the statutory restrictions regarding confidentiality and protect a pregnant minor's privacy rights. Moreover, we expect that the Arizona superior courts will follow the plain meaning of the statutory provision and apply the provision constitutionally. *See City of Akron v. Akron Ctr. for Reproductive Health,* 462 U.S. 416, 441, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983), *overruled on other grounds by Casey,* 505 U.S. at 883, 112 S.Ct. 2791.

information will not be made public. *See Whalen,* 429 U.S. at 599 n. 24, 97 S.Ct. 869; *Norman–Bloodsaw v. Lawrence Berkeley Lab.,* 135 F.3d 1260, 1269 (9th Cir.1998).

Like the right to decide whether to terminate a pregnancy, the right to informational privacy " 'is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest.' " *In re Crawford,* 194 F.3d at 959 (quoting *Doe v. Attorney Gen. of United States,* 941 F.2d 780, 796 (9th Cir.1991)). Thus, in evaluating an informational privacy claim, the Court "engage[s] in the delicate task of weighing competing interests to determine whether" the state may properly disclose confidential information. *Id.* The following factors assist us in making such a determination:

> the type of [information] requested, ... the potential for harm in any subsequent nonconsensual disclosure, ... the adequacy of safeguards to prevent unauthorized disclosure, the degree of need of access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* (quoting *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir. 1980)). It is the state's burden to demonstrate that "its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest." *Id.*

It is undisputed that a court receives sensitive private information in a judicial bypass proceeding that is worthy of constitutional protection. *See Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) ("If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.") It is also undisputed that the disclosure of such information would cause significant harm. As we hold here, however, the statute provides young women with adequate protection to prevent unauthorized disclosure of personal information. *See Whalen,* 429 U.S. at 601–602, 97 S.Ct. 869 ("[T]he remote possibility that judicial supervision of the evidentiary use of particular items of stored information will provide inadequate protection against unwarranted disclosures is surely not a sufficient reason for invalidating the entire patient-identification program."). Moreover, public interest militates in favor of permitting authorized personnel to handle closed court records.

After weighing these competing interests, we hold that section 36–2152 is sufficiently tailored and does not amount to an impermissible invasion of a young woman's right to informational privacy.

## V

We hold that the confidentiality provision of Arizona's parental consent abortion statute is constitutional because it does not invade a young woman's right of privacy on either of the grounds alleged by Planned Parenthood.

**AFFIRMED.**

FERGUSON, Circuit Judge, dissenting.

I dissent. The majority ignores the breadth of the exception in the Arizona confidentiality provision and upholds a facially invalid statute. In doing so, the majority has permitted the State of Arizona to unduly burden a young woman's right to choose whether to terminate a pregnancy. Simply put, the Supreme Court has mandated that "Big Brother" has no business snooping around this intensely private, constitutional right. Although the ramifications of today's holding

are widespread, we will not see most of them because this statute and others like it will prevent numerous young women from exercising their constitutional right to terminate a pregnancy.

### A. Right to Choose

The Supreme Court has long respected a female minor's constitutional right to choose whether to terminate a pregnancy. *Bellotti v. Baird,* 443 U.S. 622, 642, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion) (hereinafter *"Bellotti II"*). In recognizing this right, however, the Court has noted the unique circumstances facing a minor in this situation. *Id.* One of these circumstances is the interest of the State in encouraging parental involvement in this important decision. *Id.* at 639, 99 S.Ct. 3035. If the State chooses to require parental notification and consent, an alternative or bypass procedure must be provided to ensure that the right to choose is not unduly burdened. *Id.* at 643, 99 S.Ct. 3035.

As discussed by the majority, a bypass procedure in a consent statute must satisfy four requirements. *Ohio v. Akron Center for Reproductive Health,* 497 U.S. 502, 511–13, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (*"Akron II"*) (citing *Bellotti II,* 443 U.S. at 643–44, 99 S.Ct. 3035). At issue in this case is the requirement that "the procedure must insure the minor's anonymity." *Id.* at 512, 99 S.Ct. 3035 (citing *Bellotti II,* 443 U.S. at 644, 99 S.Ct. 3035). Without this requirement, there would be an "unacceptable danger of deterring" young women from exercising their "personal, intensely private, right" due to "the specter of public exposure and harassment." *Thornburgh v. Am. College of Obstetricians & Gynecologists,* 476 U.S. 747, 767–68, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986), *overruled in part on other grounds by Planned Parenthood v. Casey,* 505 U.S. 833, 882, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *see Akron II,* 497 U.S. at 512, 110 S.Ct. 2972.

Turning to the Arizona statute at hand, section 36–2152(D) begins with two provisions regarding confidentiality. First, the section provides that "[p]roceedings in the court under this section are confidential. . . ." Ariz.Rev.Stat. § 36–2152(D) (2001). Second, the section states that "[m]embers of the public shall not inspect, obtain copies of or otherwise have access to records of court proceedings under this section unless authorized by law." *Id.* However, the section then lists a multitude of individuals who are not considered "members of the public" for purposes of the section. *Id.* The excluded individuals are "judges, clerks, administrators, professionals or other persons employed by or working under the supervision of the court **or employees of other public agencies who are authorized by state or federal rule or law to inspect and copyclosed court records.**" *Id.* (emphasis added).

The exception emphasized above is unconstitutional and is the cause of my dissent. The scope of the exception is exceptionally broad, i.e., **any employee from any state or federal agency** can access the bypass proceeding files as long as they are authorized under law to review closed court records **for any purpose.** The plain language of the section does not identify the government agencies that will be able to access these records. *Cf.* Miss.Code Ann. § 41–41–61(1) (2001) (limiting disclosures of records to "the minor, her attorney and necessary court personnel"). Nor does the section limit the purpose for which the government agencies may seek these records. Could agents of the Immigration and Naturalization Service, the Census Bureau, and the Federal Bureau of Investigation access them? Because the scope and the true breadth of this exclu-

sion is unknown, the statute does not fulfill the anonymity requirement as set forth in *Bellotti II* and *Akron II* and should be held facially unconstitutional.

For the most part, the majority ignores the impact of this last sentence. Its silence is not surprising in light of the fact that the parties themselves cannot identify which employees from which agencies will be able to access the bypass proceeding files under the exclusion. What is surprising is the majority's mischaracterization of the section as a whole. The majority simply states that, under the statute, the court will retain "discretion to allow access to those employees or personnel who need access to such information in order to perform their official duties." Maj. Op. at 788. However, this characterization does not fully examine or address the ability of agency employees to review the files. Although the court may control its own employees, it cannot necessarily control those of other agencies. This is particularly true when the statute specifically provides that they may access the bypass proceeding files as long as they are authorized to inspect closed court files. Appellees argue that we should interpret the statute as providing the state court with the discretion to determine which court employees and other agency officials are entitled to access to the confidential information. Although it is true that this Court must construe a statute to avoid the danger of unconstitutionality, here, it is impossible because of the plain language of the statute clearly provides otherwise.

The majority mistakenly relies on *Akron II* to support its determination that the statute is facially valid. The Ohio judicial bypass statute, which was upheld in *Akron II,* was considerably more protective of the minor's identity than the Arizona statute presently at issue. 497 U.S. at 512, 110 S.Ct. 2972 (holding that the statute fulfilled the anonymity requirement). The Ohio statute provided: " 'The complaint and all other papers and records that pertain to an action commenced under this section shall be kept confidential and are not public records.' " *Id.* (quoting Ohio Rev.Code Ann. § 2151.85(F) (Supp.1988)). Unlike the Arizona statute, no exceptions were listed.

The majority points to the Court's statement in *Akron II* that it refused to base "a decision on the facial validity of a statute on the mere possibility of unauthorized, illegal disclosure by state employees." *Id.* at 513, 110 S.Ct. 2972. The majority uses this language in support of its proposition that "the possibility of disclosure of information by state employees may not serve as the basis for a decision regarding the facial validity of a statute." Maj. Op. at 788. However, this argument puts the cart before the horse. Although it is true that the mere possibility of disclosure by state employees is not sufficient to find a bypass statute facially invalid, we must realize that the disclosures here are authorized by the statute itself. The Arizona statute is rendered facially unconstitutional by the fact that a multitude of governmental agency employees for any purpose and without specific judicial approval are authorized under the statute to inspect the records.[1]

1. These disclosures become even more disturbing in light of the potentially lenient ramifications for state employees who receive the documents outside the scope of his or her duties. Ariz.Rev.Stat. § 38-532(E) (2002) (stating that "[a]n employee does not commit a prohibited personnel practice if he takes **reprisal** against an employee" if the employee discloses confidential information) (emphasis added). Reprisal can take many forms. The employee may have a letter put in his or her file; he or she can be asked to take an unpaid leave; he or she might receive a good "talking to." Such vague consequences are insuf-

**B. Right to Informational Privacy**

As described by the majority, this Court has considered five factors when evaluating a right to informational privacy claim. These factors include: (1) the type of information requested, (2) "the potential for harm in any subsequent non-consensual disclosure," (3) "the adequacy of safeguards to prevent unauthorized disclosure," (4) "the degree of need for access," and (5) "whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Doe v. Attorney Gen.*, 941 F.2d 780, 796 (9th Cir.1991) (citation and internal quotation marks omitted).

Although the majority recognizes the sensitive, private nature of the information and the significant harm that would be caused by disclosure of such information, it concludes that the statute protects against unauthorized disclosure and the public interest weighs in favor of permitting access. Because the majority fails to recognize the breadth of the statute's exception and cannot identify a public interest justifying the statute's scope, the majority errs in its task of weighing these factors.

As discussed above, the statute does not adequately protect against unauthorized disclosures. For example, the statute could have allowed for case-by-case judicial review of requests to inspect the files. Such a procedure would not place an undue burden on the courts since similar practices are used by courts when a party requests that a document is unsealed. In addition, other states have adopted such procedures in their judicial bypass proceedings. *See, e.g.,* Mass. Gen. Laws ch. 112, § 12S (2002) (stating that all records "shall be confidential and may not be released to any person except by the pregnant woman's written informed consent or **by a proper judicial order**") (emphasis added).

Furthermore, although there may be a public interest that overrides the privacy interest at stake, it is certainly not pointed out by the majority. In fact, the majority has not provided any reason to justify why access by state and federal agency officials should intrude on the constitutional right to terminate a pregnancy. Perhaps this silence is caused by the fact that neither party can identify who will have access under this broad exception. No matter what the cause is, however, a young women's constitutional right to terminate a pregnancy cannot be burdened when the countervailing interests cannot be identified. Thus, in weighing these factors, section 26–2152 is not sufficiently tailored and amounts to an impermissible invasion of young women's right to informational privacy.

In its criticism of my dissent, the majority ignores the plain language of the statute, i.e., that access is not limited by either the court's discretion or by the purpose for which the employee seeks the documents. *See* Maj. Op. at 788–89 n. 5. Moreover, the majority apparently believes that it is of no constitutional concern that all judicial bypass proceeding records may be accessed by government officials who are permitted by law to review court records in other types of cases. The majority contends that the only issue of constitutional concern is public knowledge.

The majority forgets that one of the fundamental reasons for the right to privacy is freedom from unwarranted governmental intrusion. "If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a per-

ficient to protect the constitutional interests at stake.

son as the decision whether to bear or beget a child." *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (citations omitted); *see also Stanley v. Georgia,* 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (stating that the Founders "conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized man") (internal quotation marks and citation omitted). That right of privacy from governmental intrusion extends not only to the bedroom, *see Griswold v. Connecticut,* 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), but to the courtroom in this case where the intensely private right is threatened by such intrusion. In other words, it is not only disclosure that is prohibited. It is intrusion itself. Although there are instances where a governmental interest will overcome the right to privacy, this is not the case before this Court. Simple curiosity or suspicion, the need to keep statistics, or the mere performance of government work is not enough to justify the intrusion permitted by the Arizona statute. The state must show a particularized, legitimate governmental need.

In sum, the broad exclusion fails to adequately protect the intensely private right of the minor, rendering Arizona Revised Statute § 26–2152 facially unconstitutional. Accordingly, I dissent.