**Norman HUBBS, Plaintiff,**

v.

**Patricia ALAMAO, Wendy Weiss, Ph.D., Dee Shafer, Ph.D., Steven Mayberg, Director of the Department of Mental Health, Diane Imrem, Psy. D., Defendants.**

No. CV 04–10215–RGK(RC).

United States District Court, C.D. California.

Feb. 14, 2005.

Norman Hubbs, pro se.

Felicity A. Senoski, Deputy Attorney General, San Diego, for Defendants.

## ORDER ADOPTING FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

KLAUSNER, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Complaint and other papers along with the attached Final Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as plaintiff's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Final Report and Recommendation is approved and adopted; (2) Judgment shall be entered dismissing the second cause of action for failure to state a claim on which relief can be granted; and (3) Judgment shall be entered dismissing without prejudice the first, third, fourth and fifth causes of action.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, and the Magistrate Judge's Final Report and Recommendation by the United States mail on the parties.

## FINAL REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Final Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On December 28, 2004, plaintiff Norman Hubbs, a civil committee confined as a sexually violent predator ("SVP") at Atascadero State Hospital ("ASH"), who is proceeding pro se and in forma pauperis, filed a civil rights complaint under 42 U.S.C. § 1983 against defendants Patricia Alamao, Wendy Weiss, Ph.D., Dee Shafer, Ph.D., Steven Mayberg, and Diane Imrem, Ph.D., in their individual and official capacities, raising five causes of action: (1) Plaintiff was denied his "right to truth in evidence"; (2) defendant Mayberg violated plaintiff's "right to privacy of medical records" under 42 C.F.R. § 482.13 by allowing the other defendants access to plaintiff's medical files;[1] (3) the defendants violated the California Constitution, Article 1, § 1, by accessing plaintiff's protected medical records; (4) defendant Mayberg violated plaintiff's right to equal protection of law by establishing arbitrary rules and regulations; and (5) plaintiff's Fourth, Sixth and Fourteenth Amendment rights were violated when defendants created "false or misleading forensic documents used in judicial and government agency proceedings to civilly commit [plaintiff] and to label him as a sexually violent pre-

dator." Plaintiff seeks compensatory and punitive damages and declaratory and injunctive relief.

### II

On July 29, 1999, in San Bernardino County Superior Court case no. FBABS05997, the San Bernardino District Attorney's Office filed a petition to civilly commit plaintiff as an SVP under the Sexually Violent Predator Act ("Act"), California Welfare & Institutions Code ("W.I.C.") §§ 6600, et seq. Clerk's Transcript ("CT") 4–51.[2] On October 11, 2000, the Superior Court found probable cause to believe plaintiff meets the criteria under the Act, and remanded plaintiff to ASH under the custody of the California Department of Mental Health ("DMH"). CT 4, 193–94. On July 1, 2003, a jury found plaintiff is an SVP, and plaintiff was committed to ASH for a period of two years. CT 604, 606–10.

### III

On January 20, 2005, this Court filed a Report and Recommendation, and on February 7, 2005, plaintiff filed objections to the Report and Recommendation. This Final Report and Recommendation addresses plaintiff's objections.

---

1. Plaintiff alleges only that defendant Mayberg violated his right to privacy under 42 C.F.R. § 482.13, which does not exist. Thus, in the original Report and Recommendation, this Court recommended dismissing the second cause of action. However, in his objections to the Report and Recommendation, plaintiff attempts to correct his pleading by arguing defendant Mayberg violated his constitutional right to privacy and federal regulations, 42 C.F.R. § 483.10(e) and 45 C.F.R. § 164.504. Unfortunately, these regulations also are of no benefit to plaintiff since 42 C.F.R. § 483.10(e) applies only to nursing homes participating in Medicare programs, see, e.g., 42 C.F.R. § 483.1, and 45 C.F.R. § 164.504 was promulgated pursuant to the Health Insurance Portability and Accountabil-

ity Act of 1996 ("HIPAA"), see 42 U.S.C. § 1320d–2, which creates no private right of action. *University of Colorado Hosp. v. Denver Publ'g Co.*, 340 F.Supp.2d 1142, 1145 (D.Colo.2004); *O'Donnell v. Blue Cross Blue Shield of Wyoming*, 173 F.Supp.2d 1176, 1180 (D.Wyo.2001). The Court, thus, addresses *infra* only plaintiff's constitutional right to privacy claim.

2. Pursuant to Fed.R.Evid. 201, this Court takes judicial notice of all documents in *Hubbs v. Hunter*, case no. EDCV04–0985–ABC(RC), petitioner's habeas corpus challenge to his SVP commitment, including the Clerk's Transcript from petitioner's state court proceeding.

## DISCUSSION

### IV

When a plaintiff is proceeding in forma pauperis, this Court is required to dismiss a case at any time it determines an action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Anderson v. Angelone*, 123 F.3d 1197, 1199 (9th Cir.1997); *Marks v. Solcum*, 98 F.3d 494, 495 (9th Cir.1996) (per curiam); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir.1997) (holding 28 U.S.C. § 1915(e)(2) applies to all complaints brought by plaintiffs proceeding in forma pauperis, not just prisoners).

Moreover, "[i]f a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 n. 1 (9th Cir.1991) (citations and internal punctuation omitted); *Cooper v.*

*Pickett*, 137 F.3d 616, 622–23 (9th Cir. 1998).

### V

The Sexually Violent Predators Act ("Act"), which took effect January 1, 1996, "reflects the Legislature's determination of the importance of identifying and controlling persons whose criminal history and mental state render them sexually violent predators." *Albertson v. Superior Court*, 25 Cal.4th 796, 801, 107 Cal.Rptr.2d 381, 386, 23 P.3d 611 (2001); *Hubbart v. Superior Court*, 19 Cal.4th 1138, 1143–44, 81 Cal.Rptr.2d 492, 495, 969 P.2d 584 (1999). The Act "provides a court process by which certain convicted violent sex offenders, whose current mental disorders make them likely to reoffend if free, may be committed, at the end of their prison terms, for successive two-year periods of state hospital confinement and treatment as long as the disorder-related danger persists." *People v. Superior Court (Ghilotti)*, 27 Cal.4th 888, 893, 119 Cal.Rptr.2d 1, 5, 44 P.3d 949 (2002); *People v. Williams*, 31 Cal.4th 757, 764, 3 Cal.Rptr.3d 684, 689–90, 74 P.3d 779 (2003), *cert. denied*, 540 U.S. 1189, 124 S.Ct. 1431, 158 L.Ed.2d 98 (2004). An SVP is defined as "a person who has been convicted of a sexually violent offense [3] against two or more victims

---

3. The Act defines a "sexually violent offense" as follows:

> For purposes of this subdivision any of the following shall be considered a conviction for a sexually violent offense:
>
> (A) A prior or current conviction that resulted in a determinate prison sentence for an offense described in subdivision (b).
>
> (B) A conviction for an offense described in subdivision (b) that was committed prior to July 1, 1977, and that resulted in an indeterminate prison sentence.
>
> (C) A prior conviction in another jurisdiction for an offense that includes all of the elements of an offense described in subdivision (b).
>
> (D) A conviction for an offense under a predecessor statute that includes all of the elements of an offense described in subdivision (b).

> (E) A prior conviction for which the inmate received a grant of probation for an offense described in subdivision (b).
>
> (F) A prior finding of not guilty by reason of insanity for an offense described in subdivision (b).
>
> (G) A conviction resulting in a finding that the person was a mentally disordered sex offender.
>
>    *    *    *    *    *    *
>
> (b) "Sexually violent offense" means the following acts when committed by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, and that are committed on, before, or after the effective date of this article and result in a conviction or a finding of not guilty by reason of insanity, as provided in subdivision (a): a felony violation of paragraph (2) of subdivision (a)

and who has a diagnosed mental disorder[4] that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." W.I.C. § 6600(a) (footnotes added). As the California Supreme Court has noted:

> No restriction is placed on the time at which a prior qualifying crime must have occurred. The definition of a "sexually violent offense" includes acts "committed on, before, or after the effective date" of the Act. However, prior crimes play a limited role in the SVP determination. "Conviction of one or more [sexually violent offenses] shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination.... Jurors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

*Hubbart*, 19 Cal.4th at 1145, 81 Cal. Rptr.2d at 496, 969 P.2d 584 (quoting W.I.C. § 6600(a)(3); other citation omitted); *People v. Otto*, 26 Cal.4th 200, 205–06, 109 Cal.Rptr.2d 327, 331, 26 P.3d 1061 (2001).

The process for determining whether a convicted sex offender qualifies as an SVP "takes place in several stages, both administrative and judicial." *Hubbart*, 19 Cal.4th at 1145, 81 Cal.Rptr.2d at 496, 969 P.2d 584. This procedure has been described as follows:

> Under [W.I.C.] § 6601, whenever the Director of Corrections determines that a defendant serving a prison term may be a sexually violent predator, the Department of Corrections and the Board of Prison Terms undertake an initial screening "based on whether the person has committed a sexually violent predatory offense and on a review of the person's social, criminal, and institutional history." The screening is conducted in accord with a protocol developed by the state Department of Mental Health. If that screening leads to a determination that the defendant is likely to be a sexually violent predator, the defendant is referred to the Department of Mental Health for an evaluation by two psychiatrists or psychologists. If both find that the defendant "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody", the department forwards a petition for commitment to the county of the defendant's last conviction. If the county's designated counsel concurs with the recommen-

---

of Section 261, paragraph (1) of subdivision (a) of Section 262, Section 264.1, subdivision (a) or (b) of Section 288, or subdivision (a) of Section 289 of the Penal Code, or sodomy or oral copulation in violation of Section 286 or 288a of the Penal Code. W.I.C. § 6600(a)(2), (b). Additionally, "[i]f the victim of an underlying offense that is specified in subdivision (b) of Section 6600 is a child under the age of 14 and the offending act or acts involved substantial sexual conduct, the offense shall constitute a 'sexually violent offense' for purposes of Section 6600." W.I.C. § 6600.1(a). " 'Substantial sexual

conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." W.I.C. § 6600.1(b).

4. A " '[d]iagnosed mental disorder' " includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others. W.I.C. § 6600(c).

dation, he or she files a petition for commitment in the superior court.

*People v. Torres,* 25 Cal.4th 680, 682–83, 106 Cal.Rptr.2d 824, 825, 22 P.3d 871 (2001) (citations omitted); *People v. Hurtado,* 28 Cal.4th 1179, 1182–83, 124 Cal. Rptr.2d 186, 188–89, 52 P.3d 116 (2002), *cert. denied,* 538 U.S. 963, 123 S.Ct. 1753, 155 L.Ed.2d 516 (2003); W.I.C. § 6601.

"Once the petition has been filed, it is reviewed by a superior court judge to determine whether it 'states or contains sufficient facts that, if true, would constitute probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release.'" *Cooley v. Superior Court (Marentez),* 29 Cal.4th 228, 244–45, 127 Cal.Rptr.2d 177, 189, 57 P.3d 654 (2002) (quoting W.I.C. § 6601.5). "If the judge determines that the petition, on its face, supports a finding of probable cause, the judge shall order that the person be detained in a secure facility" [5] until a probable cause hearing is held. W.I.C. § 6601.5; *Cooley,* 29 Cal.4th at 245, 127 Cal.Rptr.2d at 189, 57 P.3d 654.

"The next step is a probable cause hearing in superior court, at which the defendant is entitled to counsel and to confront and call witnesses." *Torres,* 25 Cal.4th at 683, 106 Cal.Rptr.2d at 825, 22 P.3d 871; W.I.C. § 6602(a). At this hearing, the superior court must "determine whether there is probably cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release."

W.I.C. § 6602(a); *Hurtado,* 28 Cal.4th at 1183, 124 Cal.Rptr.2d at 189, 52 P.3d 116. This "requires the superior court to determine whether a reasonable person could entertain a strong suspicion that the plaintiff has satisfied all the elements required for a civil commitment as an SVP, specifically, whether (1) the offender has been convicted of a qualifying sexually violent offense against at least two victims; (2) the offender has a diagnosable mental disorder; (3) the disorder makes it likely he or she will engage in sexually violent criminal conduct if released; and (4) this sexually violent criminal conduct will be predatory in nature." *Cooley,* 29 Cal.4th at 236, 127 Cal.Rptr.2d at 182, 57 P.3d 654. "Upon the commencement of the probable cause hearing, the person shall remain in custody pending the completion of the probable cause hearing." W.I.C. § 6602(a). If the superior court "determines there is not probable cause, he or she shall dismiss the petition and any person subject to parole shall report to parole." *Id.* If the superior court "determines that there is probable cause, the [court] shall order that the person remain in custody in a secure facility until a trial is completed and shall order that a trial be conducted to determine whether the person is, by reason of a diagnosed mental disorder, a danger to the health and safety of others in that the person is likely to engage in acts of sexual violence upon his or her release from the jurisdiction of the Department of Corrections or other secure facility." *Id.*

5. Atascadero State Hospital is the "secure facility" until "a permanent housing and treatment facility is available[,]" and

[it] shall be used whenever a person is committed to a secure facility for mental health treatment pursuant to this article and is placed in a state hospital under the direction of the State Department of Mental Health unless there are unique circumstances that would preclude the placement

of a person at that facility. If a state hospital is not used, the facility to be used shall be located on a site or sites determined by the Director of Corrections and the Director of Mental Health. In no case shall a person committed to a secure facility for mental health treatment pursuant to this article be placed at Metropolitan State Hospital or Napa State Hospital.

W.I.C. § 6600.05(a).

"At trial, the defendant is entitled to a jury, the assistance of counsel, and the right to retain experts to perform further evaluations." *Torres,* 25 Cal.4th at 683, 106 Cal.Rptr.2d at 825, 22 P.3d 871; W.I.C. § 6603(a). "If the state proves beyond a reasonable doubt that the defendant is a sexually violent predator, the defendant is committed to the Department of Mental Health for a two-year term." *Torres,* 25 Cal.4th at 683, 106 Cal.Rptr.2d at 825, 22 P.3d 871; W.I.C. § 6604. "The two-year term of commitment ... shall commence on the date upon which the court issues the initial order of commitment[,]" and "shall not be reduced by any time spent in a secure facility prior to the order of commitment." W.I.C. § 6604.1(a). Moreover, "the person shall not be kept in actual custody longer than two years unless a subsequent extended commitment is obtained from the court incident to the filing of a petition for extended commitment...." W.I.C. § 6604.

"After two years, the district attorney may file a recommitment petition, and the same 'rights, requirements and procedures' generally apply as govern original commitment proceedings." *Turner v. Superior Court,* 105 Cal.App.4th 1046, 1055, 130 Cal.Rptr.2d 300 (2003) (quoting W.I.C. § 6603(b)); *People v. Ward,* 97 Cal. App.4th 631, 634, 118 Cal.Rptr.2d 599 (2002). Thus, before an SVP can be recommitted under the Act, he is entitled to a jury trial, the assistance of counsel, and the right to retain experts, and "the trier of fact must find, beyond a reasonable doubt, that the [individual] is likely to commit sexually violent *predatory* behavior upon his release." *Hurtado,* 28 Cal.4th at 1182, 124 Cal.Rptr.2d at 187–88, 52 P.3d 116 (emphasis in original); *Turner,* 105 Cal.App.4th at 1055, 130 Cal.Rptr.2d 300; W.I.C. §§ 6603–04. A recommitment petition under the Act "must ... be filed before the end of any current commitment." *People v. Superior Court (Precia-*

*do),* 87 Cal.App.4th 1122, 1127, 105 Cal. Rptr.2d 159 (2001). "However, once a petition is filed, there is no additional limit on the time in which the allegations of the petition must be tried." *Id.; People v. Superior Court (Ramirez),* 70 Cal.App.4th 1384, 1390, 83 Cal.Rptr.2d 402 (1999); *see also Orozco v. Superior Court,* 117 Cal. App.4th 170, 179, 11 Cal.Rptr.3d 573 (2004) ("The statutory scheme does not require that the recommitment *order* be obtained before the expiration of the underlying term." (emphasis in original)), *cert. denied,* —— U.S. ——, 125 S.Ct. 617, 160 L.Ed.2d 471 (2004).

## VI

■ Habeas corpus is the exclusive remedy for a state prisoner or civil committee who challenges the fact or duration of his confinement and seeks immediate or speedier release. *Heck v. Humphrey,* 512 U.S. 477, 481, 114 S.Ct. 2364, 2369, 129 L.Ed.2d 383 (1994); *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973). The Supreme Court, in Heck, considered whether a state prisoner may bring a civil rights suit for damages under Section 1983 based on the alleged invalidity of a conviction or sentence, and determined that such claims are not cognizable, stating:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.... [W]hen a state prisoner seeks damages in a section 1983 suit, the district court must consider whether a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck,* 512 U.S. at 486–87, 114 S.Ct. at 2372.

■ The Heck principle is not limited to inmate challenges to convictions or sentences, but has been applied to other proceedings, as well. For example, in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court held that a prisoner cannot state a civil rights claim challenging a prison disciplinary action when the allegations "necessarily imply the invalidity of the punishment imposed...." *Id.* at 648, 117 S.Ct. at 1589. Similarly, the Ninth Circuit has applied Heck to dismiss an inmate's claim that he was denied due process of law when prison officials relied on allegedly false information in his prison file since such a claim "necessarily implicates the validity of the ... prisoner's continuing confinement" and "amounts to a[n unpermitted] collateral attack on his denial of parole and subsequent incarceration." *Butterfield v. Bail,* 120 F.3d 1023, 1024–25 (9th Cir.1997). Finally, a civil committee, such as plaintiff, cannot seek to overturn his civil commitment proceedings in a civil rights action for damages and injunctive relief. *Rogers v. Ill. Dep't of Corr. Special Eval. Unit,* 160 F.Supp.2d 972, 977–78 (N.D.Ill.2001).

## A. First and Fifth Causes of Action:

■ In his first and fifth causes of action, plaintiff claims defendants conspired to and did violate his constitutional rights by preparing allegedly "false or misleading forensic documents" used in the SVP civil commitment proceeding. Complaint at 3–4, 6–7. Specifically, plaintiff alleges defendant Alamao, a DMH employee who reviewed plaintiff's prison records and other documents, falsified information about plaintiff's criminal history to DMH psychologists, so they would recommend plaintiff's civil commitment as an SVP, and falsely certified plaintiff had been screened and found to meet all the statutory requirements for SVP civil commitment. Complaint at 5, 8–11, Exhs. E, H. The plaintiff further alleges that defendant Weiss, a psychologist, evaluated plaintiff on July 16, 1999, and committed "medical malpractice, perjury and slander" when she relied on false information to recommend plaintiff's commitment as an SVP, and misrepresented her report as factual. Complaint at 6–7, 12–18; *see also* CT 8–29 (Dr. Weiss' July 16, 1999 evaluation of plaintiff). Similarly, plaintiff alleges defendant Shafer, another psychologist, issued a report on June 21, 1999, in which she committed medical malpractice and made false statements and misrepresentations so that plaintiff would be found an SVP and civilly committed. Complaint at 6–7, 19–23; *see also* CT 30–50 (Dr. Shafer's June 21, 1999 evaluation of plaintiff). Furthermore, plaintiff alleges defendant Mayberg, who is the Director of DMH, "willfully and maliciously subject[ed] plaintiff to a fraudulent 'screening' process" related to his SVP civil commitment. Complaint at 26. Finally, plaintiff alleges defendant Imrem conducted an annual psychological review of him on June 6, 2004, and subsequently prepared a false forensic report, which insured plaintiff's continued civil commitment as an SVP. Complaint at 28–30. These allegations clearly imply the invalidity of plaintiff's SVP civil commitment; therefore, since plaintiff has not had his civil commitment set aside, Heck bars his first and fifth causes of action. *Rogers,* 160 F.Supp.2d at 977–78.

## B. Fourth Cause of Action:

■ In the fourth cause of action, plaintiff claims defendant Mayberg denied him equal protection of the law by having DMH, which he directs, exceed its statutory authority in initiating SVP proceedings against him because, as part of the vast conspiracy against him, plaintiff was subjected to a "fraudulent 'screening' process" leading to his civil commitment as an SVP. Complaint at 25–26. Yet, these allegations, if true, also imply the invalidity of plaintiff's civil commitment, *see Rogers,* 160 F.Supp.2d at 977–78 (dismissing, under Heck, inmates' claims they were denied equal protection of the law due to selective enforcement of Illinois Sexually Violent Persons Commitment Act against them to civilly commit them), and are barred by Heck.

## VII

■ Individuals have a constitutionally protected interest in avoiding disclosure of personal matters, including medical information. *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977); *Tucson Woman's Clinic v. Eden,* 379 F.3d 531, 551 (9th Cir.2004). However, "the right to informational privacy is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Tucson Woman's Clinic,* 379 F.3d at 551 (citation omitted); *Planned Parenthood of Southern Arizona v. Lawall,* 307 F.3d 783, 790 (9th Cir.2002). Thus, the Court must " 'engage in the delicate task of weighing competing interests' to determine whether the government may properly disclose private information." *In re Crawford,* 194 F.3d 954, 959 (9th Cir.1999), *cert. denied,* 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000) (citation omitted); *Planned Parenthood of Southern Arizona,* 307 F.3d at 790. Relevant factors include: (1) the type of information requested; (2) the potential for harm in any subsequent non-consensual disclosure; (3) the adequacy of safeguards to prevent unauthorized disclosure; (4) the degree of need for access; and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access. *Tucson Woman's Clinic,* 379 F.3d at 551; *In re Crawford,* 194 F.3d at 959. "The list is not exhaustive, and the relevant considerations will necessarily vary from case to case." *In re Crawford,* 194 F.3d at 959. "In most cases, it will be the overall context, rather than the particular item of information, that will dictate the tipping of the scales." *Id.*

■ In his second cause of action, plaintiff claims defendant Mayberg violated plaintiff's constitutional right to privacy when he allowed other defendants "to access and disseminate information within [plaintiff's] medical files absent court order or [plaintiff's] consent." Complaint at 3, 26–27. Thus, plaintiff once again is complaining that his right to privacy was violated when Drs. Weiss and Shafer, who initially evaluated plaintiff as an SVP, and Dr. Imrem, who conducted an annual review of plaintiff, accessed his medical records to aid in their evaluations. *Id.*

However, "disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient. Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy." *Whalen,* 429 U.S. at 602, 97 S.Ct. at 878 (footnote omitted); *see also United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir.1980) ("In recognition that the right of an individual to control access to

her or his medical history is not absolute, courts and legislatures have determined that public health or other public concerns may support access to facts an individual might otherwise choose to withhold.").

Here, the State has a compelling governmental interest in identifying, confining and treating SVPs, who have been diagnosed as sexually violent and represent a distinct threat to the health and safety of the public. *Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *see also Kansas v. Hendricks,* 521 U.S. 346, 372, 117 S.Ct. 2072, 2087, 138 L.Ed.2d 501 (1997) (Kennedy, J., concurring) ("[T]he power of the State to confine persons who, by reason of a mental disease or mental abnormality, constitute a real, continuing, and serious danger to society is well established."); *Johnson v. Nelson,* 142 F.Supp.2d 1215, 1230 (S.D.Cal.2001) ("California clearly has a valid compelling interest in protecting its citizens from sexually violent predators and in identifying these individuals prior to their release from custody so that they may be subjected to civil commitment proceedings."); *Hubbart,* 19 Cal.4th at 1153 n. 20, 81 Cal.Rptr.2d at 501 n. 20, 969 P.2d 584 ("The [Act] is narrowly focused on a select group of violent criminal offenders who commit particular forms of predatory sex acts against both adults and children.... The problem targeted by the act is acute, and the state interests— protection of the public and mental health treatment—are compelling."). Furthermore, "the [Act] contemplates and expressly provides for the disclosure of all relevant records, including medical and psychological records, and their consideration in an SVP commitment proceeding." *People v. Martinez,* 88 Cal.App.4th 465, 475–76, 105 Cal.Rptr.2d 841 (2001); *see also id.* at 476–77, 105 Cal.Rptr.2d 841 ("[T]he [Act] makes psychological records, especially those generated at ASH, relevant in determining whether a prisoner qualifies as an SVP. In addition, the [Act] contemplates that the psychological evaluators will have access to and consider these records in rendering their opinions and writing their reports. Moreover, since the Director of Corrections, the Director of Mental Health, and the prosecutor make important independent determinations concerning whether to seek an SVP commitment, the [Act] contemplates that these officials will review the reports of the psychological evaluators and thus learn information contained in psychological records that the evaluators consider relevant."); W.I.C. §§ 6601(d) & (h) (providing copies of psychological evaluations to attorney filing petition for commitment as an SVP); 6603(c) (providing for updated or replacement evaluations to support a commitment petition, which "shall include review of available medical and psychological records, including treatment records, consultation with current treating clinicians, and interviews of the person being evaluated," and making these evaluations available to the petitioning attorney and counsel for the individual who is the subject of the SVP petition). Under such circumstances, the balance falls squarely in the State's favor, and plaintiff's constitutional rights were not violated when Drs. Weiss, Shafer, and Imrem reviewed his medical records in assessing whether plaintiff is an SVP. *In re Crawford,* 194 F.3d at 960; *United States v. Dist. of Columbia,* 44 F.Supp.2d 53, 62 (D.D.C.1999).

## VIII

In his third cause of action, plaintiff claims defendants violated Article I, § 1, of the California Constitution when they accessed and disseminated information from his medical records. However, having dismissed plaintiff's federal claims, this Court declines to retain jurisdiction over plaintiff's supplemental state claim. 28 U.S.C. § 1367(c); *Brown v. Lucky Stores, Inc.,* 246 F.3d 1182, 1189 (9th Cir.2001).

## RECOMMENDATION

For the foregoing reasons, IT IS REC-OMMENDED that the Court issue an Order: (1) approving and adopting this Final Report and Recommendation; (2) entering Judgment dismissing the second cause of action for failure to state a claim on which relief can be granted; and (3) entering Judgment dismissing without prejudice the first, third, fourth and fifth causes of action.