In re Laorphus CRAWFORD, Debtor.

Jack Ferm, Appellant,

v.

United States Trustee, Appellee.

In re Ibolya Rausch, Debtor.

Jack Ferm, Appellant,

v.

United States Trustee, Appellee.

Nos. 97–16646, 97–16653.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1999

Filed Oct. 7, 1999

William Bue, Erik Bakken, James. Eustace, Allison E. Lee, Willie M. Jordan–Curtis, University of Arizona College of Law Legal Clinic, Tucson, Arizona, for the appellant.

Anne M. Lobell, United States Department of Justice, Washington, D.C., for the appellee.

Before: B. FLETCHER, and TASHIMA, Circuit Judges, and SINGLETON,* Chief Judge.

B. FLETCHER, Circuit Judge:

Appellant Jack Ferm ("Ferm") is a non-attorney bankruptcy petition preparer ("BPP"). In the course of preparing bankruptcy petitions for two debtors, Ferm did not include his own Social Security Number ("SSN") on several documents submitted to the bankruptcy court, as required by 11 U.S.C. § 110(c). The bankruptcy court subsequently imposed fines against him totaling $800 for his failure to disclose his SSN, fines that were upheld on appeal to the district court. In these appeals, Ferm contends that § 110(c) violates his constitutional rights to privacy and equal protection, as well as certain rights secured to him by § 7 of the Privacy Act. In the alternative, he argues that he has satisfied the requirements of the "reasonable cause" exception to § 110(c).

## BACKGROUND

The facts are undisputed. Ferm, who characterizes himself as an "independent paralegal," assists individuals in preparing bankruptcy petitions. In mid–1995, he filed a motion with the Bankruptcy Court for the District of Nevada seeking leave to substitute an identification number other than his SSN on the bankruptcy petitions he prepares. The motion was motivated by Ferm's fear of credit card fraud. The bankruptcy court denied the motion in an order filed on August 21, 1995.

On September 5, 1995, Ibolya Rausch and Laorphus Crawford each filed *pro se* Chapter 7 petitions with the bankruptcy court. Each petition disclosed that Ferm had assisted in its preparation. Although Ferm completed the required disclosure forms in connection with the petitions, he omitted his SSN. In response, Appellee United States Trustee ("government") asked the bankruptcy court to fine Ferm $24,000, require him to disgorge the fees he earned from Rausch and Crawford, and hold him in contempt of the court's August 21, 1995 order. In a published opinion, the bankruptcy court fined Ferm a total of $800 for his failure to include his SSN on the documents relating to the Crawford and Rausch petitions.[1] *See Ferm v. U.S. Trustee (In re Rausch),* 197 B.R. 109 (Bankr.D.Nev.1996). The district court in a published opinion affirmed the bankrupt-

---

* Honorable James R. Singleton, Chief United States District Judge for the District of Alaska, sitting by designation.

1. The bankruptcy court fined Ferm an additional $1200 for failure to include his name, address, and signature on other documents relating to the Crawford and Rausch petitions. Ferm has not challenged these fines in these appeals.

cy court. *See Ferm v. U.S. Trustee (In re Rausch)*, 213 B.R. 364 (D.Nev.1997). These appeals followed.

### DISCUSSION

 We have jurisdiction over these appeals pursuant to 28 U.S.C. 158(d). We independently review the bankruptcy court's determinations and do not give deference to the district court. *See Levin v. Maya Const. (In re Maya Const.)*, 78 F.3d 1395, 1398 (9th Cir.1996). Because the relevant facts here are undisputed, our review focuses on the bankruptcy court's legal conclusions, which are subject to *de novo* review. *See Worthington v. General Motors Corp. (In re Claremont Acquisition Corp.)*, 113 F.3d 1029, 1031 (9th Cir. 1997).

### I. The statutory framework: Section 110(c) and Section 107.

Section 110(c)[2] requires that BPPs include their SSNs on all documents filed with the bankruptcy court and authorizes the imposition of a fine in the event of noncompliance. *See* 11 U.S.C. § 110(c). Congress enacted this provision in 1994 as part of a larger effort to regulate nonattorney bankruptcy petition preparers:

> [Section 110] adds a new section to chapter 1 of title 11 United States Code to create standards and penalties pertaining to bankruptcy petition preparers. Bankruptcy petition preparers not em-

ployed or supervised by any attorney have proliferated across the country. While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors. These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

H.R. REP. NO. 103–835, at 56 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3365; *see also Fessenden v. Ireland (In re Hobbs)*, 213 B.R. 207, 210–11 (Bankr.D.Me. 1997) (discussing legislative history of § 110); 2 LAWRENCE P. KING, COLLIER ON BANKRUPTCY § 110.LH (15th ed. revised 1999) (same).

Ferm does not object to the bankruptcy court's *collection* of his SSN pursuant to § 110(c). He does, however, object to the subsequent *disclosure* of his SSN to the general public, an outcome that results from the fact that, by separate statutory provision, papers filed with the bankruptcy court become part of the public record. *See* 11 U.S.C. § 107.[3] Accordingly, we limit our inquiry today to the question of whether the disclosure of Ferm's SSN violates his constitutional or statutory rights; we express no opinion regarding whether

---

**2.** 11 U.S.C. § 110(c) provides as follows:

(c)(1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.

(2) For purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.

(3) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.

**3.** 11 U.S.C. § 107 provides as follows:

(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may

(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

(2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

the mere collection of SSNs pursuant to § 110(c) invades any legally-protected interest of BPPs.

## II. Informational privacy.

■ While the Supreme Court has expressed uncertainty regarding the precise bounds of the constitutional "zone of privacy," its existence is firmly established. *See, e.g., Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Griswold v. Connecticut,* 381 U.S. 479, 483, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). We have observed that the relevant Supreme Court precedents delineate at least two distinct kinds of constitutionally-protected privacy interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Doe v. Attorney General,* 941 F.2d 780, 795 (9th Cir.1991) (quoting *Whalen,* 429 U.S. at 599–600, 97 S.Ct. 869). Ferm argues that the disclosure of his SSN implicates the first of the two threads, sometimes referred to as the right of "informational privacy." *See generally* Francis S. Chlapowski, Note, *The Constitutional Protection of Informational Privacy,* 71 B.U. L. REV. 133 (1991); *see also Doe v. City of New York,* 15 F.3d 264, 267 (2d Cir.1994) (collecting cases and concluding that "[t]here is ... a recognized constitutional right to privacy in personal information.").[4]

We agree with Ferm that the indiscriminate public disclosure of SSNs, especially when accompanied by names and address-es,[5] may implicate the constitutional right to informational privacy. As the Fourth Circuit recognized in *Greidinger v. Davis,* "the harm that can be inflicted from the disclosure of a SSN to an unscrupulous individual is alarming and potentially financially ruinous." *Greidinger v. Davis,* 988 F.2d 1344, 1354 (4th Cir.1993).[6] In an era of rampant identity theft, concern regarding the dissemination of SSNs is no longer reserved for libertarians inveighing against the specter of national identity cards. *See id.* at 1353 ("[A]rmed with one's SSN, an unscrupulous individual could obtain a person's welfare benefits or Social Security benefits, order new checks at a new address on that person's checking account, obtain credit cards, or even obtain a person's paycheck."). Unlike a telephone number or even a name, an individual's SSN serves as a unique identifier that cannot be changed and is not generally disclosed by individuals to the public.

Judicial and legislative actions in other contexts also support the conclusion that the disclosure of SSNs can raise serious privacy concerns. *See generally* Flavio L. Komuves, *We've Got Your Number: An Overview of Legislation and Decisions to Control the Use of Social Security Numbers as Personal Identifiers,* 16 J. MARSHALL J. COMPUTER & INFO. L. 529, 549–68 (1998). For example, courts have interpreted Exemption 6 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(6), to forbid the disclosure of SSNs. *See I.B.E.W. Local Union No. 5 v. HUD,* 852 F.2d 87, 89 (3d Cir.1988). Con-

---

4. We note that one of our sister circuits has disavowed the notion of informational privacy as a constitutionally protected interest. *See J.P. v. DeSanti,* 653 F.2d 1080, 1090 (6th Cir.1981). This appears, however, to be the minority view, *see Doe v. City of New York,* 15 F.3d at 267; *Fadjo v. Coon,* 633 F.2d 1172, 1175–76 (5th Cir.1981); *United States v. Westinghouse,* 638 F.2d 570, 577 (3d Cir.1980), and is inconsistent with the law of this circuit, *see Roe v. Sherry,* 91 F.3d 1270, 1274 (9th Cir.1996); *Doe v. Attorney General,* 941 F.2d at 795–96.

5. 11 U.S.C. § 110(b) requires that BPPs include their name and address on all documents filed with the bankruptcy court.

6. *Greidinger* involved a constitutional challenge to a Virginia statute that effectively conditioned the right to vote on disclosure of a citizen's SSN. *See Greidinger,* 988 F.2d at 1352. Although *Greidinger*'s discussion of the consequences of SSN disclosure is instructive, the court ultimately struck down the statute not on privacy grounds, but because the enactment impermissibly burdened the fundamental right to vote. *See id.* at 1355.

gress, for its part, has enacted measures to control the collection and dissemination of SSNs by government agencies, including the Privacy Act, discussed in more detail below, and the Driver Privacy Protection Act, 18 U.S.C. §§ 2721–23 (barring states from disclosing "personal information," including SSNs, contained in motor vehicle licensing records).

■ The right to informational privacy, however, "is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Doe v. Attorney General*, 941 F.2d at 796. Our precedents demand that we "engage in the delicate task of weighing competing interests" to determine whether the government may properly disclose private information. *Doe v. Attorney General*, 941 F.2d at 796; *see also Roe v. Sherry*, 91 F.3d at 1274; *Barry v. City of New York*, 712 F.2d 1554, 1559 (2d Cir. 1983); *Westinghouse*, 638 F.2d at 578. Relevant factors to be considered include:

> ... the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Doe v. Attorney General*, 941 F.2d at 796 (quoting *Westinghouse*, 638 F.2d at 578). This list is not exhaustive, and the relevant considerations will necessarily vary from case to case. In each case, however, the government has the burden of showing that "its use of the information would advance a legitimate state interest and that its actions are narrowly tailored to meet the legitimate interest." *Id.* In most cases, it will be the overall context, rather than the particular item of information, that will dictate the tipping of the scales. *Compare Roe v. Sherry*, 91 F.3d at 1274 (Navy's interest in investigating a serious crime outweighed privacy interest in HIV test results) *with Doe v. City of New York*, 15 F.3d at 267 (holding that HIV status generally falls within the constitutional right to informational privacy).

■ In filling his side of the scales, Ferm makes much of the ruinous consequences that can flow from identity theft. *See Greidinger*, 988 F.2d at 1353. He also notes that the bankruptcy court has not established any safeguards to prevent disclosure of his SSN to unscrupulous third parties—as part of the bankruptcy case, a BPP's SSN becomes part of the public record, available for inspection. *See* 11 U.S.C. § 107(a); *cf. Whalen*, 429 U.S. at 600–02, 97 S.Ct. 869 (detailing security provisions built into prescription drug reporting regime); *Barry*, 712 F.2d at 1562–63 (describing review procedure limiting public disclosure of annual financial reports required of public officials); *Westinghouse*, 638 F.2d at 580 (describing safeguards employed to prevent unauthorized disclosure of employee medical records).

Properly understood, Ferm's complaint is this: the disclosure of his SSN makes him vulnerable to being a victim of certain crimes. While this surely implicates Ferm's informational privacy interests, it does not appear to constitute a more serious invasion of those interests than many other requirements imposed by government. Enhanced risk, in fact, obtains anytime the government requires an individual to deposit identifying information in the public record.[7] To weigh properly the privacy interest involved, the dire consequences of identity theft must be discounted by the probability of its occurrence. Surely government disclosure does · en-

---

7. For example, attorneys and physicians, among others, must make certain identifying information publicly available as a condition of professional licensing. Real property own-

ers are required to disclose their ownership interests via public title and deed records, which compromise their privacy and might assist criminals seeking well-heeled victims.

hance the risk of identity theft. However, the realization of the injury still requires two additional, nongovernmental elements: (1) an identity thief and (2) a vulnerable account. In that regard, Ferm's circumstance is different from the individual, for example, who is required to disclose her HIV status, sexual orientation, or genetic makeup. Unlike these personal facts, a SSN is not inherently sensitive or intimate information, and its disclosure does not lead directly to injury, embarrassment or stigma. *See* Richard C. Turkington, *Legacy of the Warren and Brandeis Article: The Emerging Unencumbered Constitutional Right to Informational Privacy*, 10 N. Ill. U.L.Rev. 479, 506–08 (1990) (distinguishing between "intrinsic" and "consequential" features of private information).

The government fills its scales with arguments that, in the final analysis, are more weighty than those made by Ferm. First, the government points to the important legislative purposes behind § 110, as did the courts below. *See In re Rausch,* 213 B.R. at 367; *In re Rausch,* 197 B.R. at 116. As noted above, § 110 was enacted to remedy what was perceived to be widespread fraud and unauthorized practice of law in the BPP industry. This certainly constitutes an important governmental interest. There is no doubt, moreover, that the gathering of BPP SSNs directly serves this interest by facilitating the governmental monitoring and policing of individual BPPs.

Of course, the government's interest in preventing fraud relates more to SSN collection than disclosure. The disclosure of SSNs, along with the rest of the contents of documents filed with the bankruptcy court, however, serves the important purposes behind the Bankruptcy Code's "public access" provision, 11 U.S.C. § 107(a). Section 107(a) is rooted in the right of public access to judicial proceedings, a principle long-recognized in the common law and buttressed by the First Amendment. *See Nixon v. Warner Comm., Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) (recognizing common law right of access to judicial documents); *see generally* William T. Bodoh & Michelle M. Morgan, *Protective Orders in the Bankruptcy Court: The Congressional Mandate of Bankruptcy Code Section 107,* 24 HASTINGS CONST. L.Q. 67, 70–80 (1996) (describing development of § 107). This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system. We also conclude that § 107 is not impermissibly overbroad when balanced against the speculative harms identified by Ferm. The enactment of a blanket open access rule obviously fosters public confidence in a way that a regime shot through with exceptions might not.[8]

After weighing the relevant considerations, we conclude that the speculative possibility of identity theft is not enough to trump the importance of the governmental interests behind § 110 and § 107. In short, the balance tips in the government's favor. Accordingly, we cannot say that Congress transgressed the bounds of the Constitution in enacting the statutes at issue here.[9]

## III. Equal protection.

 Ferm next argues that § 110(c) impermissibly discriminates between attorneys and nonattorneys. The Due Process Clause of the Fifth Amendment, which applies to the federal government, incorporates the Fourteenth Amendment's guarantee of equal protection. *See Bolling v.*

---

**8.** Section 107, in fact, admits of two exceptions to the general open access rule. *See* 11 U.S.C. § 107(b). These exceptions, however, are construed narrowly and do not affect our analysis regarding the public confidence fostered by the otherwise broad scope of § 107.

**9.** Nevertheless, Ferm has raised valid privacy concerns, and we encourage the Bankruptcy Courts to consider enacting rules to limit the disclosure of BPP SSNs.

*Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Ferm concedes that § 110(c) does not burden a suspect or quasi-suspect class or a fundamental right, and that equal protection therefore demands only that the statutory classification be rationally related to a legitimate governmental interest. *See Romer v. Evans,* 517 U.S. 620, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996).

As noted above, the disclosure of SSNs (along with all other papers filed with the bankruptcy court) pursuant to § 107(a) is rationally related to the legitimate governmental interest in facilitating public access to the courts. This is enough to defeat Ferm's equal protection argument. *See Massachusetts Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) ("[W]here rationality is the test, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.") (internal quotation omitted).

**IV. Due process.**

 Ferm contends that § 110(c) violates his substantive due process rights by conditioning his continued work as a BPP on disclosure of his SSN in the public record. While the pursuit of a profession has been recognized as a protected liberty interest, in the post-*Lochner* era a restriction on the conduct of a profession will run afoul of substantive due process rights only if it is irrational. *See Williamson v. Lee Optical,* 348 U.S. 483, 488, 75 S.Ct. 461, 99 L.Ed. 563 (1955). In order to

prevail, Ferm must establish that § 110(c) is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 65 (9th Cir.1994). For the same reasons noted above in the equal protection context, Ferm has failed to satisfy this exacting standard.

**V. Section 7 of the Privacy Act.**

 The Privacy Act of 1974 includes a provision meant to control the collection and dissemination of SSNs by government agencies. *See* 5 U.S.C. § 552a note (1996).[10] Ferm contends that the relevant bankruptcy forms that he was required to complete did not include the disclosures required by § 7(b) of the Privacy Act. The government responds by noting that § 7(a)(2)(A) of the Privacy Act does not apply "to any disclosure which is required by Federal statute." *Id.* Because the disclosure of Ferm's SSN was expressly required by § 110(c), the government reasons that § 7 is wholly inapplicable here. The government is mistaken. A close reading of § 7 makes it clear that § 7(a)(2)(A)'s exclusion for federal statutes only pertains to the limitation recited in § 7(a)(1)—that no right, benefit, or privilege be denied to any individual for refusing to disclose her SSN.

Ferm's argument, nevertheless, is unavailing. Ferm has conceded that he has no objection to the *collection* of his SSN, and thus has waived any objection stemming from the method of collection employed by the government here. Section

10. Section 7 of Pub.L. 93–579 provided that: (a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.
(2) The provisions of paragraph (1) of this subsection shall not apply with respect to—
 (A) any disclosure which is required by Federal statute, or
 (B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records

in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.
(b) Any Federal, State, or local government agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it.

7(b) has no bearing on the public *disclosure* of SSNs by the government, the only issue in dispute in these appeals.

## VI. The "reasonable cause" exception to § 110(c).

■ Ferm finally argues that he comes within the "reasonable cause" exception provided by § 110(c)(3). According to this provision, the court may fine a BPP for failing to disclose her SSN, unless "the failure is due to reasonable cause." 11 U.S.C. § 110(c)(3).

The district court below interpreted "reasonable cause" to reach only situations "where the violation is unavoidable through no fault of the violator." *In re Rausch*, 213 B.R. at 369. Consequently, the district court found that Ferm, because he intentionally violated § 110(c), did not come within the bounds of the "reasonable cause" exception. *See id.* Whether or not "reasonable cause" should be understood to exclude all intentional violations of § 110(c), we find that Ferm does not qualify for the exception here. Before filing the two petitions at issue in the instant appeals, Ferm filed an *ex parte* motion with the bankruptcy court, asking if he might omit his SSN from future petitions. The bankruptcy court denied his motion and instructed him that the express language of § 110(c) required him to include his SSN in connection with the petitions he prepared. After having been specifically notified by the court of the requirements of § 110(c), Ferm deliberately chose to omit his SSN from the petitions at issue. In light of these facts, the district court did not err in concluding that Ferm had failed to show "reasonable cause" excusing his violation of § 110(c).

## CONCLUSION

For the reasons set forth above, the bankruptcy and district courts are hereby AFFIRMED.