FILED

NOV 03 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No. CC-14-1091-DKiTa |
| ) | |
| EARL JACKSON, JR. and CHERYL ) | Bk. No. 13-29626-WB |
| HODGES JACKSON, ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| MOSES F. ABONAL; ABONAL ) | |
| PARALEGAL SERVICES, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| UNITED STATES TRUSTEE, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on October 23, 2014
at Malibu, California

Filed - November 3, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Julia W. Brand, Bankruptcy Judge, Presiding

Appearances: Marvin Levy argued for Appellants; Ron Maroko argued for Appellee.

Before: DUNN, KIRSCHER AND TAYLOR, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Following a hearing on a motion by the United States Trustee ("UST") for fines and/or disgorgement of fees ("Motion"), the bankruptcy court entered an order sanctioning the appellants, Moses F. Abonal and his business, Abonal Paralegal Services (collectively, "Mr. Abonal"), $11,000 for various violations under § 110.[2] The bankruptcy court found that Mr. Abonal had not performed bankruptcy services for the debtors as the employee of their attorney, Ruth Prager ("Ms. Prager"), but had acted as a bankruptcy petition preparer within the meaning of § 110(a)(1). Alternatively, the bankruptcy court found that, even if Mr. Abonal was Ms. Prager's employee, he did not show that he was under her direct supervision while he performed bankruptcy services for the debtors.

For the reasons set forth below, we AFFIRM.

**FACTS**

Ms. Prager is an attorney licensed to practice in California. She apparently had two Los Angeles addresses for her legal practice. The street name in the address listed with the State Bar of California and on the bankruptcy court docket was Angelo Drive. The street name in the address listed in the debtors' bankruptcy documents was Santa Monica Boulevard. The Angelo Drive address is Ms. Prager's personal residence, and the Santa Monica Boulevard address is her office.

---

[2] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

Mr. Abonal is <u>not</u> an attorney licensed to practice in California.  He operates a business called Abonal Paralegal Services, located in Los Angeles, California.  Mr. Abonal listed his business address as the same one Ms. Prager indicated was her office address (i.e., Santa Monica Boulevard).

The debtors, Earl and Cheryl Jackson, filed their chapter 7 petition on August 2, 2013.  They converted their case to chapter 13 on November 1, 2013, but later voluntarily dismissed their case on December 4, 2013.[3]

Prepetition, the debtors gave Mr. Abonal a total of $1,806, which included the $306 court filing fee.[4]  The debtors paid Mr. Abonal $800 cash on June 22, 2013, and then directly deposited $706 and $300 into his personal bank account on July 2, 2013, and July 11, 2013, respectively.  When he filed their bankruptcy documents, Mr. Abonal used his own credit card to pay the debtors' filing fee.

Mr. Abonal prepared the debtors' bankruptcy documents, including the petition, schedules, amended schedules, statement of financial affairs ("SOFA"), amended SOFA and the chapter 13 plan.  He neither signed nor provided his social security number or address on the petition, the certificate of non-attorney bankruptcy petition preparer attached to the notice of available chapters ("chapter notice"), the declaration concerning debtor's

---

[3] The bankruptcy court retained jurisdiction on all issues arising under § 110.  <u>See</u> docket no. 55.

[4] As the UST noted in its brief, Mr. Abonal does not dispute that he received these funds from the debtors.  He also admitted this fact in his opening brief.

3

schedules ("schedules declaration"), the SOFA or the amended SOFA. Ms. Prager signed all of these documents, except the SOFA, amended SOFA and schedules declaration. She also signed the electronic filing declaration and the verification of the creditor mailing list.

Mr. Abonal did not file a declaration of non-attorney bankruptcy petition preparer (Official Form 19)("bankruptcy petition preparer declaration"). He also did not file the disclosure of compensation of a bankruptcy petition preparer (Official Form 280)("bankruptcy petition preparer fee disclosure").

The SOFA, amended SOFA, the disclosure of compensation of attorney for debtor ("attorney fee disclosure") and the declaration re: limited scope of appearance pursuant to LBR 2090-1 ("attorney appearance declaration") indicated that the debtors paid Ms. Prager $1,500. The attorney fee disclosure and the attorney appearance declaration both indicated that Ms. Prager was the attorney for the debtors.

Although she was named as their attorney, Ms. Prager neither personally met the debtors nor spoke with them. She also did not appear on their behalf at the initial and continued § 341(a) meetings.[5]

---

[5] Ms. Prager admitted that she neither met nor spoke with the debtors personally due to her health. She explained that she was experiencing "excruciating pain in her lower extremity" which prevented her from walking. Due to her pain, she was scheduled to have surgery. Ms. Prager also admitted that she did not appear at the initial and continued § 341(a) meetings on the
(continued...)

Instead, Mr. Abonal met with the debtors, advising them to file for bankruptcy and explaining the various bankruptcy chapters available to them. He informed the debtors that their debts would be discharged in chapter 7, and later, that they should convert their chapter 7 case to chapter 13. Mr. Abonal also arranged to have attorneys make special appearances on the debtors' behalf at the initial and continued § 341(a) meetings.[6] Notably, these two attorneys did not speak with Ms. Prager about the § 341(a) meetings; they only spoke with Mr. Abonal.[7]

On December 24, 2013, the UST filed its Motion against Mr. Abonal.[8] The UST sought a total of $16,500 in fines against

---

[5](...continued) debtors' behalf for this same reason.

[6] Mr. Abonal arranged these attorney appearances through a service called Lawyers on Call. Lawyers on Call is a service that obtains appearance attorneys to cover various court appearances for attorneys in the Los Angeles area.
Kari Morris appeared on the debtors' behalf at the initial § 341(a) meeting. Marvin Levy appeared on their behalf at the continued § 341(a) meeting. He also represented Mr. Abonal at the February 13, 2014 hearing on the UST's Motion and in this appeal.

[7] Mr. Abonal did not submit a declaration from Ms. Morris. However, in her declaration, Ms. Prager stated that Ms. Morris had "informed [Ms. Prager's] office that the Chapter 7 Trustee needed more documents to be submitted."
In his declaration, Mr. Levy stated that he "spoke with Mr. Abonal on behalf [of] Ms. Prager" before the continued § 341(a) meeting. After the continued § 341(a) meeting, he "called Ms. Prager's office and spoke with Mr. Abonal and gave him a report of what had occurred at the [meeting]."

[8] The UST also filed a motion for sanctions and/or disgorgement of attorney's fees against Ms. Prager ("Attorney (continued...)

him for eleven violations of § 110.[9]

Specifically, the UST contended that Mr. Abonal failed to sign the petition, schedules and SOFA, or to provide an identifying number on them, as required under § 110(b)(1) and (c)(1), respectively. It further asserted that he failed to file the bankruptcy petition preparer declaration and the bankruptcy petition preparer fee disclosure timely, as required under § 110(b)(2) and (h)(2).

The UST also claimed that Mr. Abonal collected payment from the debtors for the court filing fee in violation of § 110(g). It pointed out that the deposits of cash by the debtors into a non-attorney bank account (i.e., Mr. Abonal's personal bank account) indicated that Mr. Abonal, not Ms. Prager, controlled the funds therein. Although he claimed that he delivered these funds to Ms. Prager, Mr. Abonal did not provide any documentary evidence of any withdrawal of any portion of these funds from his bank account to make a payment(s) to Ms. Prager.

---

[8](...continued)
Sanctions Motion"). See docket no. 58. Following a hearing, the bankruptcy court granted the UST's Attorney Sanctions Motion, entering an order directing Ms. Prager to disgorge and refund the debtors $1,500 in attorney's fees. See docket no. 76.

At the February 13, 2014 hearing on the Motion, the UST informed the bankruptcy court that Ms. Prager had refunded the money to the debtors.

[9] The UST apparently counted Mr. Abonal's failure to sign each bankruptcy document as a separate and distinct violation. The UST repeated this methodology as to Mr. Abonal's other actions concerning his handling of the debtors' bankruptcy case (e.g., failure to list his identifying number on the bankruptcy documents).

The UST also contended that Mr. Abonal used the word "legal" or a similar term in his ad or advertised under a category that included the word "legal" or a similar term, in contravention of § 110(f).

Specifically, the UST noted that case law had interpreted § 110(f) to mean that bankruptcy petition preparer advertising could not suggest that the bankruptcy petition preparer offered legal services. Some business names that have been found to violate § 110(f) include, "Legal Aid Services," "People's Law," "Legaltype" and "American Legal Clinic, Inc."

According to the UST, case law further had determined that the term "paralegal" implied that such a person possessed legal skills and worked under a lawyer's supervision or was authorized to use those legal skills. Under California Business & Professions Code § 6452(a), a person could not hold oneself out as a paralegal on any ad, letterhead, business card, sign or elsewhere unless he or she performed services under an attorney's direction and supervision. It further provided that a paralegal's business card must include the name of the law firm where he or she was employed or a statement that he or she was employed by or contracted with a licensed attorney.

Here, the UST argued, Mr. Abonal had used "paralegal" in his business name, Abonal Paralegal Services. He placed his business name on business cards.[10] However, he did not mention Ms. Prager

---

[10] The UST also referenced a website called Manta.com. Manta.com appears to be a website where people can search for and locate products or services offered by small businesses in

(continued...)

at all on his business cards. The UST also pointed out that Mr. Abonal had failed to submit any evidence showing that he was Ms. Prager's employee. It stressed that the "admitted lack of communication, in-person or by telephone, with Debtors . . . supports a finding that [Ms.] Prager did not directly supervise [Mr.] Abonal." The UST further emphasized that, in their declaration, the debtors considered Mr. Abonal to be the person they were hiring to prepare their bankruptcy documents. Thus, by using "paralegal" in his business's name and advertising his services as such on his business cards, Mr. Abonal violated § 110(f).

The UST also asserted that Mr. Abonal violated § 110(e)(2) by offering the debtors legal advice, even though he was not an attorney within the meaning of § 101(4). It pointed out that both Ms. Prager and Mr. Abonal admitted that Mr. Abonal had explained to the debtors the various bankruptcy chapters available to them, that their debts would be discharged and, later, that they should convert their chapter 7 case to chapter 13. Mr. Abonal admitted that he prepared the debtors' chapter 13 plan and arranged to have Ms. Morris and Mr. Levy

[10](...continued)
various cities around the country. Small business owners can list their services and products on Manta.com for free.

In his reply brief, Mr. Abonal claims that he neither placed his business name on Manta.com nor authorized anyone to do so on his behalf. He did not raise this argument before the bankruptcy court, so we do not consider it here.

Moreover, we note that the bankruptcy court did not rely on the Manta.com listing in making its determination. Instead, it relied on the debtors' declaration and testimony at the continued § 341(a) meeting, among other evidence.

8

appear with the debtors at their § 341(a) meetings.

The UST sought $5,500 in fines against Mr. Abonal for his various violations of § 110. However, it asked that the bankruptcy court triple this amount for a total of $16,500 in fines against him under § 110(l)(2)(D).

In support of its Motion, the UST submitted two declarations, one from its bankruptcy analyst, Wendy Sadovnick, and the other from the debtors. The UST also provided a portion of the transcript of the continued § 341(a) meeting held on September 25, 2014.

According to the debtors in their declaration, Mr. Abonal had explained: 1) whether or not to file a bankruptcy petition; 2) the differences between chapters 7, 11, 12 or 13 bankruptcy cases; 3) whether their debts would be discharged; 4) whether they would be able to retain their home, car or other property after filing bankruptcy; 5) any tax consequences from filing bankruptcy; 6) whether they should enter into a reaffirmation agreement; and 7) any bankruptcy procedures and rights they may have as debtors in bankruptcy. The debtors further declared that Mr. Abonal informed them that an attorney would review their bankruptcy documents before filing the bankruptcy documents with the bankruptcy court. They also stated that they received from him a copy of the amended bankruptcy preparer guidelines issued in February 2003 by the Office of the UST.

At the continued § 341(a) meeting, the debtors testified that neither of them had met or spoken with Ms. Prager. They further testified that they spoke only to Mr. Abonal and to May, Ms. Prager's receptionist.

The debtors also testified that Mr. Abonal had explained the differences between chapter 7 and chapter 13 and their ability to keep their assets while in bankruptcy. They further testified that he had advised them to file a chapter 7 petition and, if it did not work out, to file a chapter 13 petition.

In her declaration, Ms. Sadovnick asserted that, throughout the entire course of the debtors' bankruptcy case, she tried several times to communicate directly with Ms. Prager without success. Despite Ms. Sadovnick's requests, Ms. Prager never returned her phone calls. Ms. Sadovnick only communicated with May, Ms. Prager's receptionist, and Mr. Abonal, who had introduced himself to Ms. Sadovnick as Ms. Prager's paralegal.

The UST submitted other documents in support of the Motion, including copies of the debtors' bankruptcy documents, a printout of the bankruptcy court's credit card transaction search result in the debtors' bankruptcy case ("credit card transaction search result"), and receipts evidencing the three payments the debtors made to Mr. Abonal. It also submitted a copy of Mr. Abonal's business card and a printout from Manta.com. Both the business card and the Manta.com printout listed Mr. Abonal's business name, address and contact information. (Notably, the Manta.com printout described Abonal Legal Services as providing "an amalgamation of legal services.").

Mr. Abonal opposed the Motion, arguing that he was not a bankruptcy petition preparer within the meaning of § 110(a)(1).[11]

---

[11] The UST submitted a reply to Mr. Abonal's opposition. Its reply repeated many of the arguments it made in its Motion, (continued...)

10

Rather, he worked as Ms. Prager's paralegal. Because he was a paralegal and not a bankruptcy petition preparer, Mr. Abonal contended that he did not need to make certain disclosures and take certain actions as required for bankruptcy petition preparers.

As evidence in support of his opposition, Mr. Abonal submitted his own declaration and the declaration of Ms. Prager. Mr. Abonal and Ms. Prager's declarations essentially echoed all of the assertions Mr. Abonal made in his opposition. However, Mr. Abonal submitted no other evidence in support of his opposition.

In the declarations and his opposition, Mr. Abonal claimed that Ms. Prager had employed him as her paralegal for the last eight years. In fact, Ms. Prager had "personally trained" Mr. Abonal to perform paralegal work for her. At all times, he asserted that he performed work only at Ms. Prager's office. She paid him $35 per hour for the services he performed as her paralegal. Mr. Abonal also understood that Ms. Prager could terminate his employment at any time.

As her paralegal, he was under her direct supervision and control; Ms. Prager "had the right to exercise complete control over [Mr. Abonal's] work and employment." "At all times, [Ms. Prager] instruct[ed] and [gave] directions to Mr. Abonal [as to] when and how to do or perform the legal services for all of

[11](...continued)
though it added some other facts and contentions. We incorporate these additional contentions into our summary of the UST's Motion.

her clients on her behalf." He maintained that she instructed him to "manage the daily operations of her office under her direct supervision and control, such as[,] but not limited to[,] meeting the clients on her behalf, obtaining initial information from clients, accepting payments on her behalf, etc." He further asserted that Ms. Prager always reviewed and approved any and all documents he had prepared before they were filed with the court.

With respect to the preparation of the debtors' bankruptcy case, Mr. Abonal averred that all the information he had given the debtors was given pursuant to Ms. Prager's instructions. He claimed that he did not provide this information to the debtors on his own. He then went on to describe his interactions with the debtors, careful to emphasize that all that he did and said were at Ms. Prager's direction and instruction.

Mr. Abonal explained that, on June 21, 2013, the day before he met with the debtors, he informed Ms. Prager that the debtors wanted to file bankruptcy. She therefore instructed him to meet with the debtors on her behalf as she could not personally meet with them due to her health. Accordingly, Mr. Abonal met with the debtors on June 22, 2013.

He averred that, before the meeting, Ms. Prager directed Mr. Abonal to inform the debtors that Ms. Prager would be their attorney in their bankruptcy case. She also told him to disclose to the debtors the amount of her fee, which was $1,500, as well as the amount of the chapter 7 bankruptcy filing fee.

According to Mr. Abonal, at the meeting, the debtors told him that they did not have the full amount for the attorney's fee and the filing fee. They only had $800 cash on hand. Upon

12

informing Ms. Prager, she directed Mr. Abonal to accept the $800 cash on her behalf and to issue a receipt acknowledging the payment. He averred that he later turned over these funds to Ms. Prager. A week later, the debtors informed Mr. Abonal that they wanted to pay a portion of Ms. Prager's fees in cash (i.e., $706), but they could not meet with him personally to do so. At Ms. Prager's direction, Mr. Abonal told the debtors to deposit the funds in her bank account with City National Bank. The debtors were unable to get to a City National Bank branch, so again, on Ms. Prager's instruction, Mr. Abonal told the debtors to deposit the funds into his bank account with Bank of America. He repeated this instruction to the debtors when they later sought to pay the remaining fees in cash.

He further asserted that Ms. Prager instructed him to collect all of the debtors' financial information (e.g., billing statements). She also directed him to explain to the debtors the various bankruptcy chapters available to them and the mechanics of each bankruptcy chapter. When the debtors disclosed their financial difficulties, Ms. Prager instructed Mr. Abonal to inform them that their debts could be fully discharged by filing a chapter 7 petition.

Mr. Abonal averred that, when Ms. Prager received full payment of her attorney's fees and the chapter 7 filing fee from the debtors, she directed him to complete preparation of their bankruptcy documents and to send the bankruptcy documents to her for her review and approval. She later directed Mr. Abonal to prepare the debtors' motion to convert their chapter 7 to chapter 13, which she also reviewed and approved.

13

He further claimed that Ms. Prager also instructed him to prepare the debtors' chapter 13 plan and other required documents. When the debtors wished to dismiss their chapter 13 case, Ms. Prager directed him to prepare a motion to dismiss. He maintained that she reviewed and approved the motion to dismiss before she directed Mr. Abonal to file it.

At the February 13, 2014 hearing on the Motion, the UST's attorney stressed that Mr. Abonal submitted no credible evidence showing that he was Ms. Prager's employee. The UST's attorney pointed out that Mr. Abonal's declarations only contained self-serving statements. Moreover, the UST's attorney noted, Mr. Abonal did not submit any other evidence, such as W-2s, indicating that an employee-employer relationship existed between himself and Ms. Prager.

After hearing the UST's and Mr. Abonal's arguments, the bankruptcy court granted the Motion. It concluded that Mr. Abonal was a bankruptcy petition preparer, finding that he was not Ms. Prager's employee and was not under her direct supervision.

The bankruptcy court found that the declarations submitted by Mr. Abonal were not credible. It agreed with the UST that Mr. Abonal had not submitted W-2s or any other evidence "other than just the bold statement that he's an employee without discussion of the terms of his employment because he also does advertise himself as a paralegal and he's got his own paralegal services [business]." Tr. of February 13, 2014 hr'g, 8:14-18. The bankruptcy court opined "that [should be] given more weight than just the [plain] statement that he's an employee." Tr. of

14

February 13, 2014 hr'g, 8:18-19.

The bankruptcy court found that Ms. Prager was absent during the entire process of the debtors' bankruptcy case. It determined that the debtors "believed that they were hiring [Mr. Abonal], not Ms. Prager . . . ." Tr. of February 13, 2014 hr'g, 12:20-23.

Upon finding that Mr. Abonal was a bankruptcy petition preparer, the bankruptcy court ruled in favor of the UST on all of the § 110 violations asserted against Mr. Abonal. It further found that Mr. Abonal was not entitled to any fees.

The bankruptcy court fined Mr. Abonal a total of $5,550 for all of his § 110 violations. It decided to double the fine, which equated to $11,000. The bankruptcy court believed that its doubling of the fine was warranted in that the debtors "had to go the round about route through two different chapters of bankruptcy and without reaching resolution." Tr. of February 13, 2014 hr'g, 12:21-24.

Consistent with its ruling at the hearing, the bankruptcy court entered both its factual findings and legal conclusions ("findings and conclusions") and a separate order on February 24, 2014.

The findings and conclusions adopted additional factual findings articulated in the UST's Motion, such as: 1) Mr. Abonal was not an attorney licensed to practice in California; 2) Mr. Abonal filed the debtors' bankruptcy petition and paid the court filing fee with his credit card; 3) Mr. Abonal's business card did not state that he was performing paralegal services for an attorney; 4) even if Mr. Abonal was Ms. Prager's employee, he

15

did not show that she directly supervised the bankruptcy services he performed for the debtors; 5) although Ms. Prager's name appeared on their bankruptcy documents, the debtors never met nor spoke with Ms. Prager about their bankruptcy case; 6) Ms. Prager did not supervise Mr. Abonal's bankruptcy services related to the debtors; 7) Mr. Abonal provided legal-related services by arranging for attorneys to appear with the debtors at their § 341(a) meetings through a third-party service and preparing the debtors' chapter 13 plan; 8) Mr. Abonal engaged in the unauthorized practice of law; and 9) Mr. Abonal prepared the debtors' bankruptcy documents in a manner that failed to disclose his identity.

Mr. Abonal timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**[12]

(1) Did the bankruptcy court err in finding that Mr. Abonal

---

[12] Although Mr. Abonal sets forth numerous issues on appeal, we have distilled them down to two, given that he advances only two main arguments in his opening and reply briefs.

One of the issues Mr. Abonal raises is the doubling of the fines against him. However, he fails to discuss or argue this issue further in his opening brief. Mr. Abonal therefore has waived this issue. Dilley v. Gunn, 64 F.3d 1365, 1367 (9th Cir. 1995)("Issues not raised in the opening brief usually are deemed waived.").

16

was a bankruptcy petition preparer within the meaning of § 110(a)(1)?

(2) Did the bankruptcy court err in finding that Mr. Abonal violated § 110(g), (e)(2) and (f)?[13]

## STANDARDS OF REVIEW

We review the bankruptcy court's decision to impose penalties for violations of § 110 for an abuse of discretion. Frankfort Digital Servs., Ltd. v. Neary (In re Reynoso), 315 B.R. 544, 550 (9th Cir. BAP 2004), aff'd, 477 F.3d 1117 (9th Cir. 2007)(citing Consumer Seven Corp. v. United States Trustee (In re Fraga), 210 B.R. 812, 816 (9th Cir. BAP 1997)). We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc). First, we "determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1252 & n.20. A bankruptcy court abuses its discretion if it applied the wrong legal standard or

---

[13] Mr. Abonal also challenges the bankruptcy court's findings under § 110(b)(1) and (2), (c)(1) and (h)(2) on the sole, broad ground that, because he was not a bankruptcy petition preparer, he was not required to make certain disclosures and to take certain affirmative actions pursuant to § 110. As we explain below, we determine that the bankruptcy court did not clearly err in finding that Mr. Abonal was a bankruptcy petition preparer. Because he does not advance any other argument concerning those particular subsections of § 110, we need not go farther in our analysis regarding them.

17

misapplied the correct legal standard or its factual findings were illogical, implausible or without support in the record. Trafficschool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We review the bankruptcy court's fact findings concerning violations of § 110 for clear error, Reynoso, 315 B.R. at 550, and its conclusions of law de novo. Fraga, 210 B.R. at 816.

"'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" Duckett v. Godinez, 109 F.3d 533, 535 (9th Cir. 1997)(quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985)). Under the "clearly erroneous standard," we accept the bankruptcy court's factual findings unless we have a definite and firm conviction that a mistake has been committed. Greene v. Savage (In re Greene), 583 F.3d 614, 618 (9th Cir. 2009).

We give special deference to the bankruptcy court's credibility determinations. Duckett, 109 F.3d at 535. We apply the same standard to its credibility determinations as we do to its factual findings; we will not disturb such determinations unless we have a definite and firm conviction that a mistake has been committed. Id. (quoting Anderson, 470 U.S. at 574).

### DISCUSSION

Bankruptcy petition preparers help pro se debtors in preparing papers for filing in bankruptcy cases. In re Hill, 450 B.R. 885, 891 (9th Cir. BAP 2011). Although they are allowed to provide such services to pro se debtors, "many of them also attempt to provide legal advice and legal services to debtors."

18

*Ferm v. United States Trustee (In re Crawford)*, 194 F.3d 954, 957 (9th Cir. 1999) (quoting H.R. Rep. No. 103-385, at 56 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3365). However, these bankruptcy petition preparers "often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner." Id. "These services may take unfair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system." Id.

Section 110 was created to regulate bankruptcy petition preparers and to protect pro se debtors from abuse. *Fraga*, 210 B.R. at 818-19 (citations omitted). It sets forth "standards and penalties pertaining to bankruptcy petition preparers." *Crawford*, 194 F.3d at 957 (quoting H.R. Rep. No. 103-835, at 56 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3365).

Mr. Abonal raises several arguments challenging the bankruptcy court's rulings on the alleged § 110 violations. However, he mainly contends that § 110 does not apply to him, focusing on the definition of "bankruptcy petition preparer."

A.    Meaning of bankruptcy petition preparer under § 110(a)(1)

Under § 110(a)(1), a bankruptcy petition preparer is "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing."[14]

Mr. Abonal repeats the same argument that he made before the

---

[14] Section 110(a)(2) defines a "document for filing" as "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title."

19

bankruptcy court: that he was not a bankruptcy petition preparer within the meaning of § 110(a)(1) because he was a paralegal employed by Ms. Prager. He contends that an employee-employer relationship existed between himself and Ms. Prager as evidenced by: 1) her instructions and direct supervision of the bankruptcy services he performed for the debtors; 2) her review and approval of the debtors' bankruptcy documents; and 3) the fact that she had the right to terminate his employment at will. Mr. Abonal maintains that the declarations he submitted in support of his argument provide unquestionable proof of that employee-employer relationship. He principally relies on Ms. Prager's declaration, touting its credibility because, he stresses, as an attorney, she is an officer of the court who made the declaration under penalty of perjury.

But Mr. Abonal seems to forget that the bankruptcy court did not find credible any of the declarations he submitted. As we noted earlier, we accord great deference to a bankruptcy court's credibility determinations unless we are firmly and definitely convinced that it erred in its determinations. See Duckett, 109 F.3d at 535. We have no such qualms here. In fact, we agree with the UST that these declarations merely contain self-serving statements.

More importantly, Mr. Abonal failed to submit any documentary evidence establishing that he was Ms. Prager's employee. He did not present any employment contract, W-2s, tax returns – anything that would show that Ms. Prager employed him as a paralegal.

Mr. Abonal insists that proof of his employment with

20

Ms. Prager is found in her constant direction, supervision, review and approval of every single bankruptcy service he performed for the debtors. We do not quibble with Ms. Prager's claim that she was unable to be physically present when giving Mr. Abonal such directions and instructions. But aside from his and Ms. Prager's bald assertions, Mr. Abonal provided no other evidence of Ms. Prager's direction and supervision. He could have provided notes, memos, phone records, emails, letters or any other written communication showing that Ms. Prager gave him direction and provided supervision, but he did not provide any such evidence.

Mr. Abonal attacks the sufficiency of the UST's evidence, arguing that it failed to disprove that he was Ms. Prager's employee. The UST not only submitted declarations, but, in addition, it submitted portions of the debtors' testimony at the § 341(a) meeting and a copy of Mr. Abonal's business card. Mr. Abonal even acknowledged the information on his business card.

Mr. Abonal makes much of the fact that he informed the debtors that Ms. Prager would be their attorney. Mr. Abonal also highlights the debtors' statement in their declaration that he informed the debtors that an attorney would review their bankruptcy documents before filing them with the bankruptcy court. He further points out that the debtors signed the electronic filing declaration, in which they declared, under penalty of perjury, that they authorized their attorney to file electronic versions of their bankruptcy documents.

This evidence does not wash away the evidence of the

21

debtors' firm belief that only Mr. Abonal was handling their bankruptcy case. The debtors did sign the electronic filing declaration. They also disclosed in their declaration that Mr. Abonal informed them that Ms. Prager would review their bankruptcy documents. But a review of bankruptcy documents by an attorney does not necessarily translate into an understanding that an attorney actually would handle their bankruptcy case. Their belief is especially understandable, given that they never once met or spoke with Ms. Prager and that they solely interacted and dealt with Mr. Abonal. And Ms. Prager did not deny that she never met or spoke with the debtors, her supposed clients. Even Ms. Morris and Mr. Levy, the two attorneys who appeared at the § 341(a) meetings in Ms. Prager's stead, did not speak with Ms. Prager about the § 341(a) meetings; Ms. Morris and Mr. Levy spoke with Mr. Abonal only.

In short, Mr. Abonal simply did not provide sufficient evidence to overcome the UST's evidence that he was a bankruptcy petition preparer. The bankruptcy court made choices in its findings based on conflicting evidence, and we conclude that the bankruptcy court did not err in finding that Mr. Abonal was a bankruptcy petition preparer within the meaning of § 110(a)(1).

B.   Violations of § 110(e)(2), (f) and (g)

Because it did not err in determining that Mr. Abonal was a bankruptcy petition preparer under § 110(a)(1), the bankruptcy court could apply the standards and penalties of § 110 to him. We now address the bankruptcy court's determinations on each contested violation of § 110.

22

1. Violation of § 110(e)(2)

Section 110(e)(2)(A) and (B) provide that a bankruptcy petition preparer may not offer a potential bankruptcy debtor any legal advice, including: whether to file a bankruptcy petition; whether a chapter 7, 11, 12 or 13 case is appropriate; whether the debtor's debts will be discharged; whether the debtor will be able to retain his or her home or other assets; the tax consequences of a bankruptcy case; whether to enter into a reaffirmation agreement with a creditor; or concerning bankruptcy procedures and rights.

Mr. Abonal claims that he did not give the debtors any legal advice. All the information he provided to the debtors regarding their bankruptcy case had been provided as Ms. Prager's paralegal pursuant to her instructions and under her direct supervision. He did not provide this information on his own.

As we noted above, Mr. Abonal did not submit any evidence, aside from his and Ms. Prager's declarations, showing that he did not provide legal advice on his own. He did not present any written communications or other records indicating that Ms. Prager had directed him to proffer legal advice on her behalf. The bankruptcy court did not find the declarations submitted by Mr. Abonal credible. It therefore did not clearly err in finding that Mr. Abonal offered the debtors legal advice in violation of § 110(e)(2).

2. Violation of § 110(f)

Section 110(f) provides that a bankruptcy petition preparer shall not use the word "legal" or any similar term in any ads or advertise under any category that includes the word "legal" or

23

any similar term. Under California Business & Professions Code § 6452(a), a person cannot advertise as a paralegal unless he or she performs services under an attorney's direction and supervision. Also, the paralegal's business card must include the name of the law firm where he or she is employed or a statement that he or she is employed by or contracted with a licensed attorney.

Mr. Abonal contends that he was allowed to hold himself out as a paralegal on his business card because he worked under Ms. Prager's direct supervision. However, as we explained above, Mr. Abonal failed to submit sufficient evidence to demonstrate that he was employed as a paralegal under Ms. Prager's direct supervision.

Even assuming he was a paralegal employed by Ms. Prager, Mr. Abonal failed to include any information on his business cards pertaining to Ms. Prager as required under California Business & Professions Code § 6452(a). We therefore conclude that the bankruptcy court did not clearly err in finding that Mr. Abonal had violated § 110(f) in using "paralegal" in the name of his business on his business cards.

3.   Violation of § 110(g)

Section 110(g) provides that a bankruptcy petition preparer shall not collect or receive any payment from the debtor or on his or her behalf for the court fees in connection with filing the petition. Mr. Abonal argues that he did not violate § 110(g) because he received payments from the debtors on Ms. Prager's behalf pursuant to her instructions. These payments, he claims, constituted her attorney's fees. Mr. Abonal then asserts that he

24

delivered these payments to Ms. Prager.

The UST submitted as evidence three receipts, one filled out by Mr. Abonal and the other two issued by Bank of America. The receipts all indicate that the payments were given to Mr. Abonal, either personally or into his bank account.

Mr. Abonal did not effectively counter the UST's evidence. Aside from his declarations, Mr. Abonal did not present any evidence showing that: 1) Ms. Prager directed him to receive these payments on her behalf, and 2) he delivered the funds to Ms. Prager. He did not provide any notes, memos, letters, deposit slips or any other written communications in support of his contentions.

The bankruptcy court based its determination on the only credible evidence it had before it: the receipts, the credit card transaction search result and the debtors' declaration. We therefore conclude that the bankruptcy court did not clearly err in finding that Mr. Abonal violated § 110(g) by receiving payment on the debtors' behalf for fees and for their chapter 7 filing fee.

**CONCLUSION**

Based on the evidence before it, the bankruptcy court did not clearly err in determining that Mr. Abonal was a bankruptcy petition preparer within the meaning of § 110(a)(1). It moreover did not clearly err in finding that, as a bankruptcy petition preparer, he had violated § 110(e)(2), (f) and (g). We therefore AFFIRM.

25